# Wheeling.

BEACH *v.* O'RILEY *et al.*

Decided November 9, 1878.

1. The question, whether certain words in a paper have been cancelled, is a question of fact, and not of law; and in a jury case it is to be decided by the jury, and not by the court; and evidence of experts ought to be permitted to go to the jury in such case.

2. If the case, in which such question arises, is one, in which there is no jury, the court should permit the evidence of experts to be heard before deciding such question; but if it is entirely clear on the face of the paper, that certain words have been stricken out and cancelled, then as the evidence of experts could not possibly change the action of the court, the refusal of the court in such a case to permit such experts to be examined is an error not prejudicial to the party; and the action of the court ought not to be reversed.

3. A distress warrant is a writ within the meaning of the Constitution in requiring all writs to run in the name of the State of West Virginia.

4. A writ, the caption of which is "The State of West Virginia to A. B., constable," &c., or "The State of West Va. to A. B., constable," would be a writ running in the name of the State of West Virginia, as required by the Constitution.

5. But a writ, the caption of which is "State of West Virginia, Kanawha county, ss.: to A. B., constable, &c.," and which in the body of the writ does not command "in the name of the State of West Virginia," is not a writ running in the name of the State of West Virginia, as required by the Constitution, such a caption to a writ indicating merely the place, where it is issued, and not the authority, by which it is issued.

14  55
45  542

1878
Special Term.

*Supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 15th day of December, 1875, on a writ of error and *supersedeas* from a judgment of the county court of said county in a case, in which A. H. Beach was plaintiff and P. O'Riley and others were defendants, awarded on petition of said Beach.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

This is a *supersedeas* to a judgment of the circuit court of Kanawha, affirming a judgment of the county court of Kanawha, which quashed a warrant of distress, issued by a justice of said county upon the complaint of Andrew H. Beach against his tenant, Philip O'Riley, for rent, and also the forthcoming bond taken on the levy of this warrant. The bond, which was in the usual form, had been returned by the constable, who made the levy, to the clerk's office of that county, and had been forfeited, and a notice regularly given, that the obligee in the bond, Beach, would move the county court of Kanawha on January 8, 1875, for a judgment and award of execution for $1,505.00, the amount of the forfeited forthcoming bond. The notice having been properly docketed was continued from time to time till May 4, 1875, when the county court took the following action as shown by the entry on their record :

"This day came the parties, by their attorneys and thereupon the defendants craved *oyer* of the distress warrant and forthcoming bond in this cause ; and the same being produced and read, they moved to quash said warrant and bond, and each of them, for errors apparent upon the face of them, which motion being argued and submitted to the court is sustained ; and said warrant and bond are both quashed ; it is therefore considered by the court, that the defendant recover from the plaintiff his costs,

about their defense in this behalf expended, including $15.00 as allowed by law."

At the trial of the cause the record shows, that the following bill of exceptions was taken:

"*Be it remembered,* That upon the trial of this cause before the court, upon the motion to quash the distress warrant and bond taken thereon, plaintiff Beach offered to examine J. T. Brodt and E. T. Moore as experts to prove, that the words "in the name of the State of West Virginia" were in the writ, and could be seen and read therein, to which examination of experts for that purpose defendants objected, which objection being argued and considered by the court is sustained; and the court being of opinion upon inspection of said writ, that said words were not therein, plaintiff was not allowed to examine experts for the purpose aforesaid, to which ruling of the court, refusing experts to be examined for the purpose aforesaid, plaintiff excepts, and prays, that this his bill of exceptions may be sealed, signed and saved to him; and the same is done accordingly."

The following is the warrant of distress referred to in this bill of exceptions:

"STATE OF WEST VIRGINIA, KANAWHA CO., ss:

"*To A. Cave, Const., of said County:*

"Whereas Andrew H. Beach hath this day made oath before me, J. T. Brodt, a justice of the peace for the county aforesaid, that he verily believes, that Philip O'Riley, his tenant, is justly indebted to him, the said A. H. Beach, in the sum of $750.00, for rent reserved and due upon contract, for a certain messuage and tenement known as the Kanawha House (now the St. Nicholas) situate on Kanawha street, city of Charleston, Kanawha county, W. Va., being for the rent from the 9th day of May, 1874, to the 9th day of November, 1874, and being the same premises now occupied by said O'Riley. These are therefore to —— require you forthwith to distrain so much of the goods and chattels of the said Philip O'Riley,

in and upon said messuage and tenement, or which have been moved therefrom not more than thirty days, as shall be sufficient to satisfy the rents due and in arrears as aforesaid, and the costs of this distress; and for so doing this shall be your authority. Given under my hand this 19th day of October, 1874.

"J. T. BRODT, *J. P.*
"*Kanawha Co., W. Va.*"

The above blank, which has been left in the printing of this warrant, was, as shown by the original warrant brought before us by a *certiorari*, written over in words, which are still legible. These words were : "Command you, in the name of the State of West Virginia." These words were then evidently stricken out, one line in ink being drawn through the words "command you," and two lines in ink through the words "in the name of the State of West Virginia," the words "command you" having also a pencil mark on them, indicating apparently, that they were to be stricken out, and the words "in the name of the State of West Virginia," which form a line in the original writ, have in pencil before and after them a mark as of parenthesis, indicating apparently, that these words were to be stricken out also.

From this judgment of the county court, quashing this warrant and bond based upon it, a writ of error and *supersedeas* was taken to the circuit court of Kanawha county by Beach; and on December 15, 1875, the judgment of the county court was affirmed; and to this judgment of affirmance a *supersedeas* has been awarded on the petition of Beach.

*W. B. Swann*, for plaintiff in error.

*Smith & Knight*, for defendants in error.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by this record is : Did

1878
Special Term.

Beach
v.
O'Riley *et al.*

the court err in refusing to permit the examination of J. T. Brodt and E. T. Moore, as experts to prove, that the words "in the name of the State of West Virginia" were in the warrant of distress, and could be seen and read therein?

Where there is obscurity in the hand writing, and it is doubtful, what the words of a written instrument produced in evidence before the jury are, the question arises, who is to decide what the words of the written instrument are? Greenleaf in his work on Evidence vol. 1 part II, p. 316 of 12th edition § 280 says, such a question is to be decided by the court alone; and he is sustained in this position by a *nisi prius* decision of Lord Denman, who refused to have such a question submitted to the jury. See *Remon* v. *Hayward*, 2 Ad. & E. 666. But this decision is in principle inconsistent with other English decisions, where the decision of such a question is regarded as a matter of fact and not of law.

Syllabus 1.

Thus in *Masters* v. *Masters*, 1 P. Wms. 425, it was decided, that "where the will was writen blindly, and hardly legible, and as to the money legacies written in figures, it should be referred to the Master to examine and see what these legacies were, and he to be assisted by such as were skilled in the art of writing." And a similar decision was rendered in *Goblet* v. *Beechy*, 3 Sim. 24.

In *Norman* v. *Morrell*, 4 Ves. 769, the question in controversy was, whether a legacy as contained in a will was £800 or £300. The figure was originally "3"; but it was contended, that it had been altered to "8" by drawing the pen over it again and extending the upper and lower parts of the "3" towards the center; and an issue was directed to determine this controversy.

The principle recognized in these English chancery cases has been acted on in some American common law suits. Thus in *Jackson* v. *Ransom*, 18 Johns. 107, in an action of ejectment the matter in dispute was, whether a certain deed conveyed lot one hundred and seventy-

1878
Special Term.

Beach
v.
O'Riley *et al.*

four, or lot eighty-four, the figures being badly made. The determination of the question was left to the jury.

In *Armstrong* v. *Burrows*, 6 Watts 266, in the trial of a common law suit the parties differed about the date of a receipt, which had been rendered illegible, the one contending it was dated in 1823, and the other, that the date was 1824. The court below assumed the exclusive right of determining, what the figures were, and refused to put it to the jury; but the Supreme Court reversed this action. Gibson, Chief Justice, in delivering the opinion of the court says: " A writing is read, before it is expounded; and the ascertainment of the words is finished, before the exposition begins. If the reading of the Judge were not a matter of fact, witnesses would not be heard in contradiction of it; and though he is supposed to have peculiar skill in the meaning and construction of language, neither his business nor learning is supposed to give him a superior knowledge of figures or letters. His right to interpret a paper written in Coptic characters would be the same, that it is to interpret an English writing; yet the words would be approached only through a translation. The jury were therefore not only legally competent to read the disputed word, but bound to ascertain what it was meant to represent."

In the case of *Sheldon's ex'or, &c.* v. *Benham,* 4 Hill 129, the court seems to have taken the same view. The question, what are really the words in a written instrument, when they are doubtful either on account of the obscure manner in which they are written, or because of an uncertainty on the face of the writing, whether any of them have been stricken out, or altered, by the maker, is a question of fact; and if such question arises in a cause being tried by a jury, this question of fact should be submitted to the jury, and the evidence of experts on the question, what are the words in the writing, ought to be received; and if the court refused to permit such evidence to go to the jury, this court ought to reverse such action of the court below.

In this case however the question, what were the words of the warrant, though a question of fact, was necessarily to be decided by the court, it arising in a case, in which there was no jury—still if the warrant on its face rendered it doubtful, whether the words "in the name of the State of West Virginia" were still a part of the warrant, or had been stricken out by the justice, before he issued the warrant, the court ought to have permitted experts to have been examined, to give their opinion as to whether these words were in fact erased, or not. On the other hand, if on the face of the warrant it was perfectly plain, that these words had been stricken out, the defendants could not complain, that the court had refused to permit experts to be examined. For in such a case, though the experts had given ever so decided an opinion, that these words had been in fact not stricken out, the court ought to have disregarded such expression of opinion, and decided on inspection, that these words were stricken out. When the face of the warrant furnishes no ground for raising any question as to what are its words, there would be no use in examining experts, there being in such case really no disputed fact, on which their opinion is needed to enlighten the court.

In the case before us the original warrant has been examined by us; and on its face it is obvious beyond all controversy, that the words " in the name of the State of West Virginia" are stricken out. Two lines are drawn through all these words in ink. They are not ruled, or perfectly straight, lines, but lines drawn by a pen unguided. The suggestion made, that they might have been on the paper before these words were written, is therefore groundless; and it is further apparent on inspection, that they have been drawn over these words, after they had been written. It is true, that these words can be readily seen, though these lines have been drawn over them; but the fact, that words are still legible, can in no manner as a legal proposition affect the question of their cancellation, when it is obvious, that lines have been drawn over them for the purpose of cancelling them.

The counsel for appellant insists, that as these words so stricken out are included in a parenthesis made in pencil mark, the experts ought to have been permitted to testify, that words so enclosed in a parenthesis are to be regarded as a part of the text. But these experts were not, as the record shows, offered as witnesses to prove any such thing, but only that " these words were in the writ, and could be seen and read therein." This idea seems to have occurred to counsel, since the case reached this Court. But I can hardly conceive, that these experts could have been produced to prove, that the ordinary mark of a parenthesis could with printers or any one else be considered as meaning, that words stricken out were to be regarded as still in a paper. But if even the usual printer's mode of so indicating that, by writing in the margin the word " stet," had been used, it would only mean, that in copying the paper, or setting it in type, it should be altered so as to include the words stricken out. And it could not possibly have been regarded, even if " stet" had been on the margin, as making this legally a warrant having these words stricken out in it.

It is not difficult to conceive, why the words stricken out were included in a pencil parenthesis. When the justice, I presume, read over the warrant, he perceived, that as he had written it, it was ungrammatical; and he enclosed in brackets, or marked with a pencil, the portions necessary to be stricken out in order that it might read grammatically; and he then with a pen struck out the parts so marked. He would have made it read grammatically by striking out the words "require you," or the words he actually did strike out. He chose to strike out what he did; and on the face of the paper there is nothing to indicate, that he wished afterwards to restore these words much less, that he actually did so.

But it is said, that the words in the caption of the warrant "State of West Virginia, Kanawha county, ss.: To A. Cave const., of said county," is a sufficient compliance

with the constitutional provision, that writs shall run in the name of the State of West Virginia. See Art II §8 Con. of 1872. Had the heading of the warrant been "State of West Virginia to A. Cave, const., of Kanawha county," would have sufficed, for it would evidently then have been an order by "the State of West Virginia to the constable, which is all, that the Constitution requires to appear in a writ. See *Trimble, et al* v. *Patton, trustee*, 5 W. Va. 432. Nor would the contraction "State of W. Va." have vitiated, I think, the warrant, for though in *Lemons* v. *The State*, 4 W. Va. 757, it was decided, that an indictment concluding "against the peace and dignity of the State of W. Virginia" was fatally defective, this decision was based by the court on the ground, that a *literal* compliance with the Constitution in that case was required, as the very language to be used in concluding an indictment is given in quotation marks in the Constitution. The language to be used in issuing writs is not so given, and all that should, I think, be required in this case, is a substantial compliance with the provision requiring it to be in the name of the State of West Virginia. This decision in *Lemons* v. *The State*, 4 W. Va. 757, is no longer law, the words of our constitution, on which it is based, having been changed. See *The State* v. *Allen*, 8 W. Va. 684.

I have thus far assumed, that a distress warrant is a writ within the meaning of our constitution, which requires "writs to run in the name of the State of West Virginia," art. II, §8 Con. 1872. It is true, that in the cause of *M. Gutman & Co.* v. *The Virginia Iron Co.*, and *McClellan & Knox* v. *Same*, 5 W. Va. 23, and *King* v. *Board*, 7 W. Va. 703, it was held, that an order of attachment, being an authority and not an original process, was not a writ within the meaning of this provision of the constitution; and it is also true, that Mayo in his "Guide," in the forms given by him of warrants or summons in civil actions before justices, does not make them run in the name of the commonwealth, though he does in

1878
Special Term.

Beach
v.
O'Riley *et al.*

Syllabus 4.

Syllabus 3.

distress warrants and criminal processes (see Mayo's Guide, p. 673, 568 & 73.) The Constitution of Virginia in this respect is similar to that of our State; and the form of civil warrants, it seems to me, should also run in the name of the State. It was expressly held, that a summons of unlawful detainer was a writ within the meaning of our Constitution, in *Gorman* v. *Steed*, 1 W. Va. 1; and a warrant of distress, being an original process, must be held to be a writ, which must run in the name of the State of West Virginia.

Does this distress warrant in the case before us so run? Was it issued in the name of the State of West Virginia, or simply in the name of the justice who issued it? Who is it that "required the constable forthwith to distrain the goods and chattels? Is it the State of West Virginia, as the Constitution requires, or is it the justice? It seems to me clear, that it is the justice. The heading "State of West Virginia, Kanawha county, ss." is the justice's noting of the place, where he issued the warrant, and was used merely to show, that being in his county he had a right to issue the warrant. Had the words "Kanawha county ss:" been omitted, as we have seen, the warrant would have run in the name of the State, for it would then have been addressed by the State to the constable, commanding him to distrain; but with the words "Kanawha county ss." inserted it cannot be so construed. The heading, as used in this warrant, is the precise heading, which is prescribed in the certificate of the acknowledgment of a deed by a married woman in our Code. See Code of West Virginia ch. 121 §4 p. 570, and is the same as is generally used in all certificates by justices of affidavits, &c. In these cases this heading unquestionably simply indicates, where the certificate was made; and I can give no other meaning to the heading of this warrant of distress. It being a writ and not running in the name of the State of West Virginia, as required by our Constitution, it was properly quashed

by the county court; and the forthcoming bond based upon it was therefore also properly quashed.

For these reasons the circuit court properly affirmed this judgment of the county court. This judgment of affirmance must therefore be affirmed by this Court; and the appellees must recover of the appellant their costs expended in this Court, and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.