## MARIA DAVIS ET AL. v. WM. H. DAVIS.

ERROR TO THE COURT OF COMMON PLEAS OF MONTOUR COUNTY.

Argued March 6, 1889—Decided October 7, 1889.
[To be reported.]

1. As the right to make sale of goods distrained for rent and to apply the proceeds to its payment did not exist at common law, but was given by statute, the right must be exercised if at all upon the terms which the statute imposes, the courts having no power to dispense with any one of them.

2. The act of March 21, 1772, 1 Sm. L. 370, conferring upon the landlord the power to sell in cases of distress, authorizes a sale only after an appraisement has been made at the expiration of five days from the day of the distraint and notice thereof to the tenant.

3. In computing the five days which must elapse before the appraisement, the day of the seizure is excluded, and if the fifth day thereafter fall on Sunday, it is also excluded; wherefore, if goods be distrained on Tuesday, an appraisement cannot properly be made before the succeeding Tuesday.

4. If an appraisement of goods distrained for rent, made before the lapse of five full days after the seizure, be followed by a sale, the distrainor is not protected by the statute, but becomes a trespasser ab initio and is liable to the owner of the goods for their full value.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 191 July Term· 1888, Sup. Ct.; court below, No. 68 February Term 1886, C. P.

On February 11, 1886, William H. Davis brought trespass against Maria Davis, Joshua Davis and J. W. Weidenhamer, and on February 5, 1887, filed a declaration averring that on July 22, 1884, the defendants with force and arms took, carried away and converted certain goods and chattels of the plaintiff, and damage therefrom. The defendants on March 26, 1887, pleaded not guilty, and on September 21, 1887, filed a special plea averring that the goods and chattels mentioned in the declaration were lawfully seized and sold by J. W. Weidenhamer, as bailiff of Maria Davis, by virtue of a distress warrant for the recovery of arrears of dower interest due to her as widow of David Davis, deceased, reserved and charged upon certain lands upon which said goods and chattels were at the time of their seizure.

Issue being joined, the case was called for trial on December 21, 1887, when the following facts were made to appear:

On July 22, 1884, William H. Davis was in arrears in the payment of dower interest charged in favor of Maria Davis upon land in his occupancy, to the amount of $4,546.44, and on that day, which was Tuesday, Mrs. Davis executed and delivered to J. W. Weidenhamer, constable, a warrant of distress authorizing and requiring him to distrain the goods and chattels of William H. Davis, being upon said land, to enforce payment of this sum. Thereupon, Weidenhamer went upon the land mentioned in the distress warrant, and in pursuance of its directions distrained the goods and chattels of William H. Davis thereon found, serving upon him a notice of the distress and a schedule of the goods levied upon. On Monday, July 28, 1884, the goods were appraised by appraisers duly chosen and qualified, and on August 5, 1884, after due advertisement, they were sold by the bailiff at public vendue, the proceeds of the sale amounting to $3,380. Testimony was given for the plaintiff, tending to show that Joshua Davis was present participating in the acts of Weidenhamer in connection with the distress.

Charge of Court below.

At the conclusion of the evidence, the court, SITTSER, P. J., charged the jury as follows:

This is an action brought by William H. Davis against Maria Davis, Joshua Davis, and J. W. Weidenhamer, in which the plaintiff seeks to recover damages for injuries which he alleges have been inflicted upon him by reason of the defendants' going upon his place in Limestone township in this county and taking away from him and disposing of a large amount of personal property.

There is no dispute in the evidence in the case but that the defendants, or some of them, came there and seized various articles of personal property and sold or disposed of them, and deprived the plaintiff of the possession and use of them. The defendants undertake to justify themselves in doing this, by reason of what is called a landlord's warrant. They claim that the plaintiff, William H. Davis, was indebted to Maria Davis for a considerable sum of money which, as they allege, was due to her from an interest under the intestate laws in the farm upon which William resided and which he claimed to own, and that they had a right to proceed by distress to collect this money.

We are of the opinion that they had a right to put what is called a landlord's warrant in the hands of a constable and to proceed to distrain the personal property of Willam H. Davis, found upon his premises, for the payment of this sum which is due to Maria Davis. But, when they undertake to apply proceedings of this kind, it is their duty to comply with the requirements of the act of assembly regulating such proceedings; and it is claimed, on the part of the plaintiff, that they have failed to do this. It was their duty when they distrained the property, when they levied upon it, to give William H. Davis notice by a schedule of the articles which they distrained; William H. Davis then had five days from the time at which notice was given, in which to replevy this property. After the expiration of the five days, it is the duty of the constable, or of the officer distraining the property, to cause an appraisement of the property to be made; and if the officer executing this process fails to require that appraisement to be made at all, or makes it within the five days, he becomes a trespasser; has no right afterwards to sell the property; cannot justify under the proceedings.

[It appears from the evidence in this cause that an appraisement was made. The act of assembly requires that it shall be made after the expiration of five days from the time of the levy; as the last of the five days fell on Sunday, notice of the levy having been given upon Tuesday, the five days would not be completed until after Monday following, and it was not a compliance with the law to make the appraisement on that day, the following Monday; it was one day too soon; and the defendants might as well have made the appraisement before they made the levy, or not to have made any appraisement at all, as to make it in a way or at a time not provided for in the act of assembly; and, therefore, we say to you that, in consequence of this, the proceedings were irregular and void; that the defendants cannot justify their conduct by these proceedings, and are trespassers; trespassers ab initio, or from the beginning. The plaintiff is therefore entitled to recover, and he is entitled to recover against the persons who seized and took away his property. Maria Davis signed the warrant of distress which was put in the hands of the constable. The constable executed the warrant. Some evidence has been given to the effect that Joshua Davis was there; whether he was there, aiding, abetting and assisting, so as to become responsible in damages for the injuries inflicted upon the plaintiff, is a question of fact for you.] [1]

\*       \*       \*       \*       \*       \*       \*       \*       \*

The counsel for the defendants have requested us to say:

1. That, if you believe from all the evidence in the case that the amount of money realized from this sale was appropriated to the payment of a debt which William H. Davis owed to Maria Davis, his mother, that fact could be taken into consideration by you in mitigation of damages, lessening the amount which would otherwise be recoverable.

Answer: We do not agree with counsel for the defendants in that respect, and we say that it should not be taken into consideration in mitigation of damages. We instruct you, on the contrary, that where one person seizes the property of another, dispossesses him of it, without warrant and process of law, he who makes the unlawful seizure is not entitled to urge in mitigation of damages that he applied the proceeds of the sale of that property to the payment of a debt which the person

whose goods he takes owed him, or to the extinguishment of any other assumed or existing indebtedness. The defendants in this case unlawfully, and therefore wrongfully interfered with the plaintiff's dominion over his own property; and when any person thus interferes with a man's dominion over his own property, he who is injured thereby has the right to recover the value of the property from the person who wrongfully deprives him of the possession of it.[7]

Counsel for the plaintiff requests us to say to you:

4. That the act of assembly, relating to the sale by distress of personal property, requires that an appraisement be made after the expiration of five days from the date of the levy; and therefore an appraisement made before the expiration of the five days is illegally made, and renders the sale unlawful and void as well as the levy.

Answer: Affirmed.[2]

5. That the act of assembly requires that five full days should be allowed the defendant in the distress, in which to replevy his goods; and, in the computation of the time, the day of the distress is to be excluded, and where the last or fifth day shall fall on Sunday, such day must be excluded from the computation.

Answer: Affirmed.[3]

6. That it is incumbent upon the defendants in this case, acknowledging the distress and sale of the goods of the plaintiff, under a warrant issued by Maria Davis, to show a strict compliance with all the provisions of the act of assembly relating to levy and sale by distraint; but that, as the evidence establishes the fact that the appraisement was made within five days of the levy, the sale that followed, made by the constable, was illegal, and the plaintiff is entitled to recover.

Answer: Affirmed.[4]

7. That the levy in this case being made on Tuesday, July 22, 1884, and the appraisement on Monday, July 28, 1884, there were not five full days intervening given the defendant in the distress, in which to replevy his goods; and the appraisement was made before the expiration of the five days, which was an irregularity, which irregularity made the defendants in this cause trespassers ab initio.

Answer: Affirmed.[5]

8. That under all the evidence in the cause, the plaintiff is entitled to recover the value of the property distrained, together with lawful interest thereon from the time of the distraint.

Answer : This last point we do not fully affirm. We say to you that the plaintiff is entitled to recover the value of the property taken from him, the value at the time it was taken; but we do not say that he is entitled to recover interest thereon. We do say that you may take into consideration the length of time that has elapsed since the property was taken from him and he was deprived of the possession and use of it; and if, in your judgment, he ought to have his damages increased beyond the value of the property taken, by a sum equal to the interest upon that value from the time it was taken, you can give to him such increase in finding the total of damage.[6]

The jury rendered a verdict in favor of the plaintiff and against all the defendants, for the sum of $5,524.26. Judgment having been entered thereon, the defendants took this writ, assigning for error:

1. The portion of the charge embraced in [  ][1]

2–6. The answers to plaintiff's points.[2 to 6]

7. The answer to defendants' point.[7]

*Mr. C. G. Voris*, of *McCleery & Voris* (with whom was *Mr. W. J. Baldy*), for the plaintiffs in error :

The several assignments of error raise but one question: Whether Maria Davis is a trespasser and liable in damages for holding the appraisement on Monday, July 28, 1884, of goods and chattels distrained by her on Tuesday, July 22, 1884.

1. Brisben v. Wilson, 60 Pa. 452, and McKinney v. Reader, 6 W. 39, construing § 1, act of March 21, 1772, 1 Sm. L. 370, hold that the landlord cannot appraise until after the expiration of the five days allowed the tenant in which to replevy; and that if the distress is made on Tuesday, the last of the five days falls on Sunday, dies non juridicus, and the tenant has all of Monday on which to replevy, and the landlord must appraise on Tuesday, it being the day after the expiration of the five days. The act of June 20, 1883, P. L. 136, confirms the mode of computation of time adopted in Brisben v. Wilson and

McKinney v. Reader, in so far as it provides that where an act is to be performed in a prescribed period of time, the first day is to be excluded and the last included, and if the last day of such period shall fall on Sunday, it shall be omitted from the computation.

2. But in applying the provisions of the act of 1883 to the relative rights and duties of landlord and tenant, and the periods of time in which their respective rights and duties are to be exercised and performed, as prescribed in the act of 1772, we find that they apply with greater force to the landlord than to the tenant. It is the landlord that it is ordered and directed by the act of 1772, an existing law, to do an act within a prescribed period of time, viz.: to appraise the goods of the tenant after the expiration of the five days next after the taking of the distress. There is no order or direction to the tenant to do any act; but the landlord must appraise, if he would lawfully collect his rent out of the goods distrained; he has no other alternative, an appraisement is a condition precedent to his right to sell the goods.

3. The time prescribed for the appraisement is therefore on the sixth day after the distraint, which in this case fell on Monday, the 28th. Sunday, the fifth day, is not to be excluded in this computation, because it is an intermediate and not a terminal day. But granting it to be true that Sunday is to be excluded in reckoning the five days within which William H. Davis had the right to replevy, both he and Maria Davis could have exercised their respective rights of replevying and appraising on Monday, July 28th. He did not choose to exercise his privilege then or at any time prior or subsequent. She was compelled to appraise on that day; she could not lawfully do so at any other time. By doing it then she did not trespass on or injure the rights of the plaintiff.

*Mr. H. M. Hinckley* (with him *Mr. S. P. Wolverton*), for the defendant in error:

An appraisement within the five days from the day of levy and notice, followed by a sale, makes the distrainor a trespasser ab initio: Jackson & Gross, L. & T., § 190; Taylor's L. & T., § 613; Kerr v. Sharp, 14 S. & R. 402; Brisben v. Wilson, 60 Pa. 457; Richards v. McGrath, 100 Pa. 399. In

the present case, Sunday, the fifth day after the day of the distress, was dies non juridicus and not to be counted, so that the appraisement made on Monday was made before the five days had expired: Robinson v. Waddington, 13 A. & E. (66 E. C. L. R.) 753; Taylor's L. & T., § 609; Jackson & Gross, L. & T., § 184; Goswiler's Est., 3 P. & W. 201; McKinney v. Reader, 6 W. 37; Harker v. Addis, 4 Pa. 516; Cromelien v. Brink, 29 Pa. 524; Marks v. Russell, 40 Pa. 373; Brisben v. Wilson, 60 Pa. 457; Duffy v. Ogden, 64 Pa. 241. The act of 1883 did not change the law in any respect; it only confirmed by statute what had already been fixed by decisions for fifty years.

OPINION, MR. JUSTICE WILLIAMS:

This action is brought to recover the value of goods distrained and sold. The distress was for arrears of dower charged upon the land held by the plaintiff below under a decree in partition. The amount to be paid to the widow annually was fixed by the decree. The sum distrained for was honestly due and unpaid. The goods seized were on the premises bound for the payment of the money and were liable to seizure and sale for the arrears due. The plaintiff's right to recover in the court below rested on the single technical rule brought to the attention of the court by the fifth, sixth and seventh points.

The court was requested by the seventh point to charge the jury: "That the levy in this case being made on Tuesday, July 22, 1884, and the appraisement on Monday, July 28, 1884, there were not five full days intervening given the defendant in the distress, in which to replevy his goods; and the appraisement was made before the expiration of five days, which was an irregularity, which irregularity made the defendants in this case trespassers ab initio." This point was affirmed. The correctness of this ruling is the only question presented on this record.

Turning our attention to the right to distrain, we find that it was not given by statute but existed at common law. It belongs to that class of remedies for a wrong suffered, which the injured party may administer by his own act: 3 Bl. Com., 10. But, a common law distress was levied in order to constrain or compel the payment of rent in arrears, and the dis-

trainor could make no other use of the goods seized than to hold them. They could be kept impounded for an indefinite time, but they could not be sold, used, or appropriated in any manner to the payment of the rent due: Morris on Replevin, 29; Woods on Landlord & Tenant, § 543. The right to sell the goods seized and to apply the proceeds to the payment of the rent, was first given in England by the statute of 2 W. & M. c. 5, § 2, which provided that after holding the goods for five clear days exclusive of the day of seizure, to afford the tenant opportunity to pay the rent or replevy his goods, the landlord might sell the goods for the best price that could be got for them, and apply the proceeds to the payment of the rent. In this state, the right to sell was conferred by the act of March 21, 1772, on the following terms: "If the tenant or owner of the goods distrained shall not within five days next after such distress taken and notice thereof . . . . . replevy the same, with sufficient security to be given to the sheriff according to law, then and in such case, after such distress and notice aforesaid and expiration of the said five days, the person distraining shall and may . . . . . cause the goods and chattels so distrained to be appraised by two reputable freeholders, . . . . . and after such appraisement, shall and may after six days public notice, lawfully sell the goods and chattels so distrained," etc.

Now, as the right to sell did not exist at common law but was given by statute, it must be exercised, if at all, on the terms which the statute imposes. The courts have no power to dispense with any one of these, for such power would be legislative and not judicial. For this reason it was held in England, under the statute of William & Mary cited above, that a failure to comply with the statutory formalities, in any particular, rendered the landlord and his bailiff trespassers ab initio and liable to the owner of the goods seized for their full value, regardless of the rent due. The inconvenience and injustice resulting to landlords from the application of this plain legal principle was relieved against by the statute of 2 Geo. II. § 19, c. 19. It stated the mischief to be remedied as follows: "And whereas it hath sometimes happened that upon a distress made for rent justly due, the directions of the statute made in the second year of the reign of King William and

Queen Mary, entitled, etc., have not been strictly pursued, but through the mistake or inadvertence of the landlord or other person entitled to rent and distraining for the same, or of the bailiff or agent of such landlord or other person, some irregularity or tortious act hath been afterwards done in the disposition of the distress so seized and taken as aforesaid, for which irregularity or tortious act the party distraining hath been deemed a trespasser ab initio," etc.; and it provided by way of remedy therefor that the landlord, his bailiff or agent, should not become a trespasser ab initio by reason of any irregularity or tortious act in the disposition of a distress seized, but that for any injury sustained by the tenant or owner of the goods, by reason of such irregularity or tortious act, such tenant or owner should recover the actual damage sustained and no more. This statute had been in operation in England for fifty years before our act of 1772 was passed, but its principle was not adopted. The act of 1772 was framed upon the statute 2 W. & M., and the landlord was left under the necessity of strict compliance with its provisions, or of being held a trespasser ab initio and liable as such for the full value of the goods seized and sold. A failure, therefore, to make an appraisement of the goods, or the making of it before the lapse of five full days after the seizure, is a failure to follow the statutory requirement on which the right to sell is given, and a sale made under such circumstances, not being under the protection of the act, is unauthorized and void: Briggs v. Large, 30 Pa. 287; Kerr v. Sharp, 14 S. & R. 399; Brisben v. Wilson, 60 Pa. 452.

In this case, the seizure was made on Tuesday. The fifth day after, was Sunday. This being excluded from the count, the fifth juridical day was Monday, and the appraisement could not be properly made until Tuesday. The act gave no authority to make it until after full five days had elapsed after the seizure. It gave no authority to sell until after an appraisement made in accordance with its directions. As the appraisement was made on the fifth day instead of after, it was made one day too soon. So far as its legal effect is concerned, it might as well have been made on the day of the seizure, or not made at all. The sale of the goods was not made under the authority of the act of 1772, because its directions were not

followed, and, no other authority having been shown, the conclusion is inevitable that the sale was unauthorized and that the plaintiff below was properly allowed to recover.

This is a great hardship. There is no suggestion of any actual injury resulting from the appraisement on Monday instead of Tuesday: None could have resulted so far as we are able to see, but that is not for us to determine. The act requires that the appraisement shall be made after five days, and authorizes a sale only after "such appraisement." Relief from the consequences of an irregularity in the proceedings must come here, as it came in England, by means of a legislative provision. Until it does come, we have the unpleasant duty of enforcing a rule, which, though sound in law, is harsh in its application to cases like that under consideration, and in this works positive injustice.

Judgment affirmed.