# CHARLESTON.

CURTIS v. THE DEEPWATER RAILWAY COMPANY.

Submitted March 22, 1910.   Decided March 7, 1911.

1. ASSUMPSIT, ACTION OF—*Grounds—Timber Contract.*

Where there is a contract between the parties, though the title to the land be in dispute, *assumpsit* will lie upon the contract, fully executed, for the value of timber sold, and cut and taken from land.

2. EJECTMENT—*Judgment—Conclusiveness.*

A judgment in ejectment, though by default, is conclusive not only as to the right to possession, but as to the right and title to the land.

3. INFANTS—*Judgment Against Infant Defendants.*

Such a judgment against an infant defendant, not sued as such, and not defended by guardian *ad litem*, is not void, but is simply erroneous, reviewable, formerly by writ of error *coram nobis*, now by motion, and by appeal to this Court, pursuant to chapter 134, Code 1906; and though such judgment will not bar an infant in an action commenced by him within five years after reaching his majority, it is binding and conclusive upon him after that time.

4. APPEAL AND ERROR—*Right to Complain.*

Though in ejctment pedigree is not provable by recitals in a deed less than thirty years old, yet, in an action by vendor against vendee for timber taken from land, such vendee not objecting, an interpleader showing no right or title to land or timber, can not defeat plaintiff's recovery by objecting in this Court for the first time to the sufficiency of the proof of pedigree.

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Raleigh County.

Action by Milton Curtis against the Deepwater Railway Company, H. H. Harper, and others. From the judgment, defendant Harper brings error.

*Affirmed.*

*A. P. Farley* and *File & File,* for plaintiff in error.

*O. P. Fitzgerald, Jr.,* and *Brown, Jackson & Knight,* for defendant in error.

MILLER, JUDGE:

In a suit in *assumpsit* against the railway company plaintiff sought to recover the purchase price of certain timber on a tract of thirty-five acres in Raleigh county, sold by contract in writing, dated February 3, 1904. The defendant appeared, and pursuant to section 1, chapter 107, Code 1906, filed its affidavit, admitting the correctness of the amount sued for under said contract, but affirming that said timber and the purchase money therefor were claimed by H. H. Harper, the plaintiff in error; that it was not colluding with said Harper, and was ready to pay or dispose of the sum due, $252.76, as the court might direct. Whereupon, on April 5, 1905, as provided by said statute, the court made an order requiring Harper to appear on the first day of the next term and state the nature of his claim, and maintain or relinquish the same, and stayed all further proceedings until that term, and directed that a copy of the order be served on Harper.

Harper appeared as required, and filed his answer denying plaintiff's right and right of action against the railway company, and asserting right and title in himself to said land and the timber thereon. He alleges that long prior to the time plaintiff obtained his claim of title from Azel Ford, he acquired title thereto from T. J. McGinnis, by deed dated December 12, 1900, and which deed he proffers with his answer. He also avers that he sold to defendant company the said timber, by·contract in writing, dated May 25, 1903, exhibiting said contract also with his answer. The prayer of his petition is that he be made a party defendant, and allowed to prove his claim against said company, and that said company be required to pay the money sued for to him as rightfully entitled thereto.

Upon the filing of said answer the court, without objection or exception, directed an issue be made to be tried before a jury, whether the said railway company shall pay plaintiff, Milton Curtis, for the timber described in his contract filed with his declaration, and provided in its order that Curtis should be plaintiff, and Harper defendant in said issue.

On the trial of this issue the jury were sworn to well and truly try the issue joined between plaintiff, Milton Curtis, and the defendant, Henry H. Harper, and a true verdict render according to the evidence. After hearing all the evidence adduced by both parties, the jury found for plaintiff Curtis on the issue joined, and that the railway company pay Curtis the sum sued for and so claimed by Harper.

Curtis introduced in evidence many deeds and other muniments of title, which he claimed carried him back by an unbroken chain to a patent from the Commonwealth of Virginia to De Witt Clinton, for 130,000 acres, dated February 17, 1796. Among them is the record of a judgment in ejectment, of the District Court of the United States, for the District of West Virginia, at Charleston, in which Mindwell P. Granger, Executrix, and others, are plaintiffs, and Henry M. Riffe, said H. H. Harper, and others, are defendants. That judgment pronounced September 23, 1871, among other things recites that on that day the defendants, naming them, including said Harper, by S. A. Miller, their attorney, withdrew their pleas theretofore entered and consented that plaintiffs should have judgment for the land in controversy, and that judgment was that plaintiffs recover of said defendants the tract of land sued for, and that they have a writ of possession therefor, but, by consent of parties, without costs as to said defendants.

The immediate deed to Curtis, offered in evidence, and relied on, is from Azel Ford and wife, dated June 29, 1903, describing the land by metes and bounds as containing thirty acres. The next prior paper in the chain of title is a deed from the widow and devisees of Francis Granger, deceased, and the widow and heirs at law of Gideon Granger, deceased, and others, dated January 23, 1888, to the said Azel Ford. These two deeds, therefore, connect plaintiff directly with the judgment in ejectment of said Grangers against said Harper and others. This

judgment concludes and estops Harper as to all claims or claims of title originating prior to that judgment, if not as to all outstanding titles which he might have shown to defeat recovery in ejectment. Were not all other title papers introduced, therefore, superfluous? It would seem so.

Defendant Harper on the trial offered no evidence of paper title, not even his deed from McGinnis, of December 12, 1900, to which, in his petition, he referred his claim of right and title to the timber sued for. But as a matter of precaution plaintiff at the close of his evidence offered this deed in evidence, and also the contract of Harper with J. H. Dillard, of May 25, 1903, purporting to sell to Dillard, representing said railway company, the said timber. The only evidence offered by Harper was the oral evidence of himself and three or four other witnesses, on the subject of possession. So far as the evidence of the witnesses other than himself was concerned it related to acts of trespass, at his suggestion, subsequent to the bringing of this suit. In his evidence he refers his claim of title not to his alleged deed from McGinnis. After saying that he claimed the land, he testified as follows: "Q. How long have you had possession? A. I don't know; I *claimed* (past tense) that I have had possession of twenty four years. I got that from Daniel Harper in 1881." Who Daniel Harper was, is not shown; nor is it shown how the witness claimed under Daniel Harper, whether by deed or otherwise; nor when or how his claim originated.

In their petition for a writ of error, counsel for Harper assign numerous errors, but in their original brief filed here they argued but two, which they regarded decisive, apparently abandoning all others. In a supplemental brief, however, filed on the hearing, after counsel for plaintiff had filed their brief, they discuss briefly some, if not all, their original points, and assign some new ones. Counsel for plaintiff, in their brief, anticipating the supplemental brief, and fearing also that this Court, as they say, courts sometimes do, "in order to keep busy" might "go outside the claims of counsel", discuss all points of error covered by the petition for the writ of error. We may be pardoned for saying in reply to the suggestion that we are always very glad to confine ourselves to the points covered by the claims

of counsel, unless we find they have misconceived their case, or have overlooked something fairly presented, and which in our opinion is controlling, or necessarily involved in a proper disposition of the cause. We think we might have assumed that the points of error assigned in their petition for a writ of error, not covered by the original brief of counsel, were regarded by them, as of little merit, and unworthy of consideration. But as counsel on both sides, in the subsequent briefs filed, argued all these and other points, we have been burdened with the consideration thereof, with the result, however, that we have found little, if any, merit in them, and will not, except incidently, further notice them in this opinion.

The first point made in the original brief of defendants' counsel is that *assumpsit* will not lie. They rely on *Parks* v. *Morris, Layfield & Co.,* 63 W. Va. 51, 59 S. E. 753. This case does not support their contentions. Quite the contrary. That case simply holds that in the absence of contract between the parties, if the title to the land be in dispute, *assumpsit* will not lie for the value of timber cut and taken from the land. In that case the title was in dispute, and Parks had no contract, and proved none. In the case at bar plaintiff has a contract in writing with the railroad company, fully executed on his part, and *assumpsit* was the proper, if not his only remedy. So there is no merit in this point.

The second point is that plaintiff failed to connect himself in title with the Commonwealth, in that the grant to De Witt Clinton, of February 17, 1796, is not under the Lesser Seal of the Commonwealth. For this proposition *Jarrett* ·v. *Stevens,* . 36 W. Va. 445, point two of the syllabus, is relied on. On this proposition counsel for plaintiff cite and rely on *Virginia Coal & Iron Co.* v. *Keystone Coal & Iron Co.,* 101 Va. 723, and cases therein cited, approved in *Howdashell* v. *Krenning,* 103 Va. 30; *Robinson* v. *Dewhurst,* 15 C. C. A. 470-1. In accord with the latter cases we find *Aycock* v. *Railroad Co.,* 89 N. C. 321; *Strain* v. *Fitzgerald,* 128 N. C. 396, both citing numerous other cases on the subject. But we have concluded we need not, and should not decide this question; that it does not properly or fairly arise on the record, for the reason that as to the parties to this suit, defendant is estopped and concluded by said judg-

ment in ejectment, of September 23, 1871, in the suit of M. P. Granger, executrix, and Francis Granger, executor, of Gideon Granger, deceased, Francis Granger, in his own right, and others, against said Harper and others. That judgment, as already indicated, shows that on that day defendants, by their attorney, withdrew their pleas, and consented that plaintiffs might have judgment for the land in controversy, and that judgment was pronounced accordingly. Now, by statute, section 35, chapter 90, Code 1906, but not before the statute, a judgment in ejectment is conclusive not only as to the right to the possession, but as to the right and title to the land. *Clark* v. *Perdue,* 40 W. Va. 300; *Wilson* v. *Braden,* 48 W. Va. 196, 207. And such conclusiveness and finality, says the Court in *Clark* v. *Perdue, supra,* at page 304, applies as much to a judgment by default, as to one rendered on a verdict found on issue joined, for section 12, chapter 90, says: "And if the defendant fail so to appear and plead, his default shall be entered and judgment given against him." So that a judgment in ejectment is now as conclusive on the parties and their privies, as a judgment in any other kind of a case. And the general rule in all cases is that an adjudication is final and conclusive, not only as to the matters determined, but as to every other matter which might have been litigated and have been decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the ligitimate purview of the original action, both in respect to the matters of claim and of defense. *Rogers* v. *Rogers,* 37 W. Va. 407. A defendant may now defeat plaintiff's recovery by showing a valid outstanding title in a third person. *Reusens* v. *Lawson,* 91 Va. 226; *Parkersburg Ind. Co.* v. *Schultz,* 43 W. Va. 470, 476.

But a new point made and argued is that Harper was an infant, and that the judgment in ejectment does not bind or conclude him; that no guardian *ad litem* was appointed, and that he did not defend by guardian *ad litem.* Harper was not sued as an infant, and the only ground for affirming his infancy, is that the record shows a memorandum, apparently made on the back of the declaration and immediately following the return of service by the officer, neither signed nor authenticated by any person,

as follows: "The following defendants are minors: Wm. T. Harper, Calvin M. Harper, Henry H. Harper, Jacob F. Harper, Elvira F. Harper, and Harry J. Harper." We cannot regard this memorandum as any part of the record, or as contradicting ·it. According to the record all defendants appeared by counsel. It is not likely that counsel appeared for infants, not represented by guardian. *ad litem.* True section 36, of said chapter 90, Code 1906, provides that a judgment in ejectment rendered against a person at the time an infant shall not bar an action commenced by him within five years after removal of such disability, but it would bar him after that time. This statute contemplates of course a case defended by guardian *ad litem.* But a judgment in ejectment against an infant not so represented is not void. At most it is but error; reviewable formerly by a writ of error· *coram nobis,* now by motion, and by appeal to this Court, under chapter 134, Code 1906. *Campbell* v. *Hughes,* 12 W. Va. 183, 206; Warvelle on Eject., section 104, page 109; Newell on Eject., pp. 73, 74. So we see nothing in the claim of infancy.

Another point made in the supplemental brief for Harper, not assigned as error in his petition, nor covered by the brief of plaintiff's counsel, is that plaintiff has failed to connect himself by legal proof of pedigree, with the plaintiffs in said ejectment suit. In the deed from Robert C. Winthrop, and others, to Azel Ford, of January 23, 1888, the fact that some of said grantors are devisees and heirs, connecting them with plaintiffs in said suit is fully recited, but it is claimed that such recitals in a deed of that late date is not sufficient to establish the facts recited. This might present a troublesome question in an ejectment suit, with defendants in possession. *Webb* v. *Ritter,* 60 W. Va. 193, 232, and cases cited, among them *Wilson* v. *Braden,* 56 W. Va. 372. This is not ejectment, and there is no substantial proof of possession by Harper; only occasional acts of trespass, most of them since suit brought. The· action here is *assumpsit,* on a contract, by plaintiff against the railroad company. Harper is only an interpleader, setting up claim of right to the money due, in opposition to that of plaintiff. He shows no title or right. The defendant company has raised no question of title, except as to Harper's claim, and we do not think Harper

can prevail in such a case by alleging title in the plaintiffs in the ejectment suit, or want of proof of pedigree in the grantors in the deed to Azel Ford.

··So far as we can see there is no reversible error in the judgment below and it should be affirmed.

*Affirmed.*