State *ex rel.* WALTER S. MYERS, *etc.*

*v.*

ROY HODGE, *et al.*

(No. 9878)

Submitted January 14, 1947.  Decided March 18, 1947.

*Scherer, Bowers & File,* for plaintiffs in error.

*Ned H. Ragland,* for defendants in error.

LOVINS, JUDGE:

This action in covenant in the name of the State of West Virginia for the use and benefit of Walter S. Myers against Roy Hodge and the surety on his official bond, Hartford Accident and Indemnity Company, was instituted in the Circuit Court of Raleigh County. To a judgment of that court for plaintiff in the sum of $514.60, the defendant prosecutes this writ of error.

On or about the 1st day of July, 1942, Walter S. Myers, then twenty years of age, entered into an oral agreement with H. D. Irwin for the lease of a three-room apartment in the City of Beckley, West Virginia, at a monthly rental of twenty dollars. Pursuant to the agreement Myers, his wife and child occupied the premises as their home. Myers paid no rent, and on September 2, 1942, Irwin procured a distress warrant from J. P. Meadows, a Justice of the Peace of Raleigh County, for rent in the amount of $68.00. In the present state of the record we assume that the amount of rent claimed is correct, and was due at the time the distress warrant was issued.

The warrant was delivered to defendant, Roy Hodge, a constable of Raleigh County, who commenced execution of the same on September 2, 1942, by levying on certain personal property and household furnishings belonging to Myers and valued at $514.60.

On the 4th or 5th of September, 1942, Myers left Beckley, and, after working in Bluefield, West Virginia, for one week, he went to Huntington, West Virginia, where, on September 14, 1942, he enlisted in the United States Navy.

The exact date when the wife and child of Myers left Beckley does not appear, the trial court having sustained objections to questions intended to elicit that fact, but it is shown that Myers' wife followed her husband to Huntington, and remained there during the time of his service in the Navy.

No effort was made by Myers to contest the issuance, levy of, and purported sale under, the distress warrant, and on October 15, 1942, defendant Hodge advertised the sale of the personal property which he had theretofore levied on, to be held "on Monday, the 26th day of October, 1942, between the hours of 9 o'clock A. M. and 4 P. M., of said day, at the ——————————, in Raleigh County, West Virginia, * * *." It is shown that on October 15, 1942, copies of the foregoing notice were posted at the court house of Raleigh County, on a telephone post on Prince Street in the City of Beckley, and near the premises thertofore occupied by Myers. It was stipulated that the notice quoted above was a true copy of the notice as posted, although Hodge testified that the notices posted in fact stated the place at which the sale would be held. On October 26, Hodge attempted to sell the property, but, no bidders being present, he continued the sale until October 28, 1942, on which day he purportedly sold the household goods of Myers to Mrs: H. D. Irwin for $10.25.

Plaintiff and his wife testified that they had no knowledge of the issuance and levy of the distress warrant, nor the sale made thereunder, until after October 28, 1942, when the wife of plaintiff made an effort to obtain the goods from Mrs. Irwin. After his discharge from the Navy, Myers instituted this action in covenant against Hodge and the surety on his official bond.

At the conclusion of all the evidence adduced by plaintiff and defendants, the trial court sustained a motion to strike the evidence of defendants from the record and instructed the jury to return a verdict for plaintiff, but submitted to the jury the question of the amount due plaintiff. After receiving the directions of the court, the jury found a verdict in favor of plaintiff in the sum of $514.60, on which verdict the court entered judgment.

Defendants assign as error the action of the trial court in directing a verdict for plaintiff and rendering judgment thereon. We think the following questions are

comprehended within that assignment, and fairly arise on the record herein: (1) were the issuance and levy of the distress warrant sustained by facts and authorized by law; (2) is the sale of plaintiff's property valid; (3) what is the true measure of plaintiff's damages in this action; (4) was the Soldiers' and Sailors' Civil Relief Act of 1940 a bar to the issuance and levy of the distress warrant and the sale thereunder.

Before discussing the merits of the case, however, it is appropriate to pass on the preliminary question whether the action on an officer's bond lies for wrongful execution of a distress warrant. By inference this Court approved such an action in *State* v. *Miller,* 104 W. Va. 226, 139 S. E. 711. Therefore, we conclude that the remedy pursued here by plaintiff is proper.

The rights of the parties to this action depend in a large measure on facts and legal principles applicable to the issuance and levy of a distress warrant and the sale thereunder by defendant Hodge.

At common law a landlord had the right to distrain the goods of a tenant, which could be done by a bailiff or private individual. But that right has long since been modified by statute. Moreover, a distress under the common law was effectual only as security for rent and the goods and chattels of a tenant could not be sold to satisfy the landlord's demand. *Smith* v. *Ambler, et al.,* 1 Munf. 596. Under existing statutory provisions, only a qualified officer, such as a sheriff or constable, may make sale of a tenant's goods under a writ of distress. *Ferguson, et al.* v. *Moore,* 2 Wash. (Va.) 54.

A distress warrant is a writ within the meaning of the Constitution requiring all writs to run in the name of the State. *Beach* v. *O'Riley, et al.,* 14 W. Va. 55. But a distress warrant is not a judicial process, and it is unnecessary to make it returnable before a justice or court. *Anderson* v. *Henry, et al,* 45 W. Va. 319, 31 S. E. 988. This Court has held that a proceeding by distress for rent, pursuant to Chapter 93 of the Code, 1923, is judicial in

character.. *Newman* v. *Robson & Prichard,* 86 W. Va. 681, 104 S. E. 127. But we have found no opinion of this Court which goes any further in defining a writ of distress and the action thereunder as having juristic qualities. By Chapter 80, Acts of the Legislature, 1925, statutory provision was made for the trial of the issues arising upon the issuance of a distress warrant; but in the revision of the Code of 1931 the provisions of that act were eliminated and the former pertinent statutory provisions as contained in the Code of 1923 were restored. After the revision of the Code of 1931, this Court, in discussing the effect and scope of a distress warrant, said: "The fact that the amount laid in a distress warrant exceeds $300.00, which is the limit of jurisdiction of justices in civil matters, is not material, because a distress warrant does not operate to initiate a proceeding for juristic determination of the rights of the parties. There can be no trial on such warrant." *Bierne* v. *Snyder,* 114 W. Va. 691, 692, 173 S. E. 570. It is now provided by statute that "Rent of every kind may be recovered by distress * * *." Code, 37-6-9. A distraint for rent must be made within one year after the time it becomes due, and must be made by a sheriff or constable of the county wherein the premises yielding the rent, or some part thereof, or the goods liable to distress may be found. Code, 37-6-12. The warrant is issued by a justice and is founded upon the affidavit of the person claiming the rent or his agent. Code, 37-6-12.

It is not disputed that a proper affidavit was filed with the justice by the landlord claiming the rent, and that a writ of distress was issued and delivered to a constable. So far as disclosed by this record, the constable made a proper levy of the distress warrant, and unless the infancy of Myers eliminated the contractual basis for the relation of landlord and tenant, we do not think that the issuance and levy of the distress warrant was wrongful.

Counsel for Myers directs the attention of this Court to the fact that Myers was an infant. Generally speak-

ing, contracts of infants are voidable, and may be ratified or disaffirmed after majority, and if one who was an infant when he incurred the obligation does not seek to avoid it on the ground of infancy, it stands as a valid and binding liability. *Andrews* v. *Floyd,* 114 W. Va. 96, 170 S. E. 897. Moreover, there is an exception to the general rule in that an infant may do acts for his benefit which are binding. The principle of this exception is applied generally to cases where the infant has acquired property, and clearly acted for his own benefit. When a contract is of an uncertain nature, as to the benefit or prejudice, it is voidable at the election of the infant. *United States* v. *Blakeney,* 3 Gratt. 405. Furthermore, contracts for necessaries such as food, lodging, clothing or other things essential to life and comfort and to enable him to live according to his station in life, cannot be avoided on the ground of infancy. *Wallace* v. *Leroy,* 57 W. Va. 263, 267, 50 S. E. 243. But even if the contract between Myers and Irwin for lease of the premises could be considered voidable, such contract is valid until disaffirmed by Myers. *Gillespie, et ux.* v. *Bailey, et al,* 12 W. Va. 70. See *Andrews* v. *Floyd, supra.* The disaffirmance of a contract must be made within a reasonable time. *Muncey* v. *N. & W. Ry. Co.,* 106 W. Va. 348, 145 S. E. 581. What is a reasonable time is determined by the facts and circumstances of each particular case. *Hobbs* v. *Hinton Foundry, etc., Co.,* 74 W. Va. 443, 82 S. E. 267; *Muncey* v. *N. & W. Ry. Co., supra.* It does not appear from the record when Myers was discharged from the Navy; nor does it appear that he has taken any steps to disaffirm the contract of lease between him and Irwin. When it is considered that Myers had a family, required a place for himself and his family to lodge or reside, we conclude that the contract of lease is valid and binding and that the relationship of landlord and tenant between Myers and Irwin was created.

Plaintiff herein argues that a guardian *ad litem* should have been appointed to protect his rights in the distress proceeding to collect the rent. The failure to appoint a guardian *ad litem* in a suit, action or other pro-

ceeding wherein there is a trial, is an irregularity, but such failure is in no wise jurisdictional and at most constitutes reversible error only. *Chapman* v. *Branch,* 72 W. Va. 54, 60, 78 S. E. 235. This Court. has held on a writ of error to a judgment rendered in an ejectment proceeding that the judgment was not void because of the failure to appoint a guardian *ad litem. Curtis* v. *Railway Co.,* 68 W. Va. 762, 70 S. E. 776. See *Linn* v. *Collins,* 77 W. Va. 592, 597, 87 S. E. 934.

In order that a trial may be had on matters arising under a distress warrant, the tenant must give a forthcoming bond, and if the condition of the bond is breached, an action on the bond may be brought and the tenant may present such matters of defense as are authorized by the statute. Code, 38-6-7, 10, 11 and 12. In such circumstances the tenant's rights may be fully and effectively asserted in an action on such forthcoming bond. Otherwise a trial may not be had on matters arising under a distress warrant. There was no trial in this case and the facts disclosed by this record show no reason for any hearing. The infancy of Myers not being known at the time of the issuance of the writ of distress and there being no trial effectuated in the manner outlined above, there was no occasion for the appointment of a guardian *ad litem.*

However, the notice of sale is fatally defective. We have noted that defendant Hodge testified that the place of sale was incorporated in the notices posted by him, but the stipulation of the parties establishes a different situation. Clearly under the notice of sale incorporated in this record, the place of sale was not set forth or indicated. The time and place of sale in a distress warrant are required to be fixed by the officer charged with its execution, and ten days' notice of such sale must be given by posting the same at the door of the courthouse of the county and some other conspicuous place near the residence of the owner, if he resides in the county. Code, 38-4-20. The deficient notice probably occasioned the absence of bidders on the day fixed for sale. How would

a prospective bidder know where the sale was to be held? How could he ascertain the location execpt by making inquiry of the officer? Hodge could not sell it on the day originally fixed, and having continued the sale, two days later sold it to the wife of the landlord for a small sum. According to undisputed testimony, the sale price did not in any wise represent the value of the goods sold. In the circumstances of this case, no place of sale having been stated in the notice and the goods having been sold for an apparently inadequate consideration, we conclude that the sale was void and that Myers is now the owner of the goods.

The jury, in fixing the amount of the verdict, apparently accepted the testimony introduced in behalf of plaintiff that the goods were valued at $514.60, which seems to have been the purchase price of the goods when new. Is either the purchase price of the goods or the value thereof at the time this suit was instituted the true measure of damages suffered by plaintiff? We do not think so. As hereinbefore stated, the landlord at common law had no right to sell the goods of a tenant; but under the statute 2 Wm. & Mary, Chapter 5, Section 2, the landlord was given the right to sell the goods for the best price he could get, and apply the proceeds to the payment of rent. Under that statute it was held by the English courts that the landlord's right to sell, being given by statute, must be exercised in strict compliance with the terms thereof. It was further held that under the statute cited above, the failure of the landlord to comply with the statutory formalities rendered him and his bailiff trespassers *ab initio* and liable to the owner of the goods for their full value regardless of the rent due. A statute passed by the English Parliament, being 11 George II, Section 19, Chapter 19, relieved landlords from the heavy penalties and strict requirements of the former statute. In applying the last statute, it was held in *Wallace* v. *King*, 126 Eng. Rep., 9, that trover by a tenant would not lie for goods irregularly sold under a writ of distress, which is legal in its inception. For a clear discussion of these English statutes, see *Davis* v.

*Davis,* 128 Pa. 100, 18 Atl. 514. But the action of the trial court in this case in permitting a recovery based on the value of the goods allegedly sold is equivalent to a recovery in an action of trover.

A statute similar to 11 George II, Section 19, Chapter 19, is now in force in this jurisdiction, reading as follows: "Where distress shall be made for rent justly due, and any irregularity or unlawful act shall afterwards be done by the party distraining, or his agent, the distress itself shall not be deemed to be unlawful, nor the party making it be therefore deemed a trespasser ab initio; but the aggrieved by such irregularity or unlawful act may, by action, recover full satisfaction for the special damage he shall have sustained thereby." Code, 37-6-15. See 2 Tiffany, Landlord and Tenant, pages 2083, 2084, and 2085.

The only construction of Code, 37-6-15, required in the instant case is to ascertain the meaning of the words "special damages." They are damages which do not necessarily result from the injury complained of, but must be specially pleaded, except where they are conclusively presumed from the facts stated. *Morrison* v. *Allen,* 106 W. Va. 224, 145 S. E. 277.

We do not think that the value of the goods either at the time of the institution of the suit or the time of the levy of the distress warrant is the true measure of such special damages. On the contrary, the special damages provided for in the statute and in the decided cases mean the actual injury to plaintiff's goods occasioned by the act of distrainor, or his agent, as well as a reasonable sum for the loss of the use thereof, from which should be deducted the amount of the rent due the landlord. *Newman* v. *Robson & Prichard, supra.* Of course, if for any reason the distress is void *ab initio,* a different rule for the measure of damages should be applied. But in this case the issuance and levy of the distress warrant were regular, the sale under that distress was void, and thus this case comes within the clear meaning and intent of Code, 37-6-15.

In ruling on plaintiff's motion to strike the evidence of defendants and to direct a verdict for plaintiff, the trial court stated that the motion was sustained on the ground that the sale was prohibited under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, the pertinent portion of which reads as follows: "No eviction or distress shall be made during the period of military service in respect of any premises for which the agreed rent does not exceed $80.00 per month, occupied chiefly for dwelling purposes by the wife, children, or other dependents of a person in military service, except upon leave of court granted upon application therefor or granted in an action or proceeding affecting the right of possession." Section 530 (1), Title 50, App., U. S. C.A. Section 530 (2), *id.*, provides the procedure for obtaining leave of court in such actions or proceedings. Admittedly no effort was made to comply with the provisions of said Section 530 (2). But the period of military service is defined in Section 511 (2), *id.*, as commencing with the date of entering active service. It is therefore seen that when the writ was issued, and levy thereunder was made, Myers was not in the United States Navy and was not entitled to the benefits provided by Section 530, Title 50, App., U. S. C. A. It would be futile for us now to discuss whether that section applies to the purported advertisement and sale under the levy of the distress warrant, which were the only acts done in executing the warrant after Myers' enlistment in the Navy, since all of those acts were void for other reasons above stated.

It is true that the execution of the distress warrant is not complete until all things required by law to be done thereunder shall have been completed, including the sale of the property on which levy has been made. *State* v. *Miller, supra.* Therefore, it would seem that by appropriate actions on his part, or in his behalf, Myers could have availed himself of the benefits of Section 523, Title 50, App., U. S. C. A., providing for stays of executions which were instituted either before or during the

period of military service. However, that section contemplates two situations: first, where the serviceman, or someone in his behalf, applies to the court for the benefits provided by the section; and, second, where there is no application by a serviceman, or by someone in his behalf. In the first situation, with certain noted exceptions, the application of the benefits of the section are mandatory on the court; but in the second situation, the application of the benefits of the section are within the sound discretion of the court. Clearly the instant case does not fall within the first situation as stated above. In considering the case as a whole, we can see no abuse of discretion in so far as the second situation above noted is applicable.

It is not shown in this record that Meadows, the defendant, Irwin, or anyone else connected with the issuance and levy of the writ of distress or the purported sale thereunder, were informed of Myers' enlistment in the Navy until several years after the purported sale. On the contrary, Myers knew that his goods were in an apartment for which he had paid no rent, and, although he and his wife deny knowledge of the issuance and service of the writ, it is apparent that they were either extremely careless or that there is an obvious discrepancy in their testimony. They left the City of Beckley knowing that they were leaving their furniture in an apartment for which no rent had been paid. The plaintiff is charged with knowledge that the landlord has a lien for rent and has a right to enforce that lien by a writ of distress; nevertheless, he did nothing until he returned from his service in the Navy, and now attempts to mulct defendant in damages and advances the theory that the sale of his household goods should have been stayed without request for such action on his part. If Myers had been alert in the protection of his rights, he could and should have ascertained the facts with reference to the levy of the distress warrant, and should have made application to the constable attempting to execute the warrant for a stay of the sale. He did nothing. We are of

opinion that if Myers was entitled to any benefits under the Soldiers' and Sailors' Civil Relief Act of 1940, such benefits have been waived by him.

Plaintiff urges that the failure to comply with the provisions of Section 520, Title 50, App., U. S. C. A., avoids the proceedings on the distress warrant. But that statute clearly contemplates a judicial proceeding wherein, under ordinary circumstances, an appearance by all parties is made and a judicial hearing had. As stated above, there is no hearing in a proceeding on a distress warrant to which Myers would have otherwise made an appearance as intended by Section 520, *id*. Except as noted elsewhere in this opinion, a proceeding on a distress warrant is not a judicial proceeding as contemplated by Section 520, *id*. Instead, it is a statutory proceeding by means of which a common law lien for rent due is enforced and executed. It is clear that Section 520, *id*., is not applicable to the case at bar.

It is true that the Soldiers' and Sailors' Civil Relief Act of 1940 should be liberally construed. It is for the protection of those who went to perform their duty in the service of their government in the hour of trial and grave emergency. "But in some cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use." *Boone v. Lightner*, 319 U. S. 561, 575, 63 S. Ct. 1223, 1231. We think that the facts of the case at bar present such a situation as adverted to by the Supreme Court of the United States in *Boone v. Lightner, supra*. It was, therefore, error for the trial court to sustain plaintiff's motion to strike the evidence of defendants and direct a verdict in favor of plaintiff on the ground that defendant Hodge had violated the Soldiers' and Sailors' Civil Relief Act of 1940.

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is reversed and the case remanded for a trial not inconsistent with the principles stated herein.

*Reversed and remanded.*