# CHARLESTON.

## Squires v. Squires *et al.*

Submitted June 12, 1908.   Decided May 4, 1909.

1. DESCENT AND DISTRIBUTION—*Release of Claim.*
   If a child, in consideration of money or property advanced to him by the parent, execute a writing releasing his right as prospective heir and distributee of the estate of such parent, he is thereby estopped from asserting any claim to the estate against the other heirs and distributees. (p. 614.)

2. RELEASE OF INTEREST.
   Query: Suppose such child, at the date of such writing, was one of a number of children, all of whom should die without issue before the death of the parent except himself, thus leaving him sole heir, where would the estate go? (p. 615.)

Appeal from Circuit Court, Braxton County.

Bill by Addison Squires against Asa Squires and others. Decree for plaintiff Addison Squires, and Asa Squires appeals.

*Affirmed.*

HAYMOND & FOX and MORRISON & RIDER, for appellant.

C. C. HIGGINBOTHAM and HALL BROS., for appellees.
65 W. Va.

WILLIAMS, JUDGE:

D. S. Squires died intestate on the 11th day of November, 1905, seized of about 1200 acres of land, leaving a widow and six children and one grandchild as his only heirs at law.

In April, 1906, this suit was brought in the circuit court of Braxton county for the assignment of dower, and the partition of the land among all of the heirs. Byrd C. Dunn and Otis Squires, two of the defendants, answered the original bill, and set up, by way of cross relief, the fact that Asa Squires, one of the sons, had before his father's death, released all claim, as heir and distributee, to his father's estate in consideration of money advanced to him by his father, and was, therefore, not entitled to participate in the benefits of said estate.

At July rules, 1906, plaintiff filed his amended bill alleging practically the same matter contained in said answer and cross bill. Asa Squires answered, admitting the execution of the release set up against him, but denying that it had the effect to deprive him of the right to share with the other heirs in his father's estate, claiming that such release should be treated only as proof of an advancement to him by his father, and that he should be allowed to bring this advancement into *hotchpot* and share with the other heirs. Exceptions to this answer were sustained. The depositions of Elizabeth Squires, the widow, and of others were taken; and on the 4th day of March, 1907, the cause, being regularly matured, was heard. A decree was made appointing commissioners to assign dower and partition the land among all the heirs except Asa Squires, and holding that he was not entitled to participate in either the real or personal property of which his father died seized and possessed.

Assignment of dower and partition was made pursuant to said decree, and on the 17th day of July, 1907, the cause was further heard upon the commissioner's report, and it was decreed that each of the six heirs should take and hold in severalty and in fee simple the several parts assigned to them. This excluded the son Asa. From these two decrees he obtained this appeal.

Whether, or not, there is error in the decree appealed from depends upon the legal effect of the release given by Asa Squires to his father at the time the advancement was made to him. It reads as follows: "Salt Lick Bridge, W. Va., Dec. 1st, 1890.

At my own request, know all persons by these presents, that I, Asa Squires, have this day accepted and received at the hand of D. S. Squires (my father) Twelve Hundred and Thirty-five dollars ($1235.00) as a legacy or a sum in full for any and all claims of money or property, that may be vested in me, by reason of heirship or otherwise, in the estate of D. S. Squires now & forever, as witness my hand & affix my seal this the day & date above written.    ASA SQUIRES    (Seal.)" It is shown by the testimony of the widow that some time after the execution of this release, D. S. Squires had expressed to her the wish that his three sons should have his lands, and that he intended the home place for her and his son Asa; but this is rendered ambiguous by the fact that he had four sons, one son by a previous marriage, a half brother to the others, who lived in the far West. Another witness, G. T. Herndon, says that D. S. Squires, two or three years before his death, stated to him that "he had offered the three boys to go out and divide up the place to suit themselves, and that he would make the writing to correspond to their division." It is further shown by witness John M. Squires, a nephew of deceased, that deceased kept a memoranda of advancements made to his children, one item thereof reading as follows: "J. H. Dunn (September 10, 1903, 600—given to Mrs. Bird C. Dunn as a balance due to her from my estate as a bequest." But it is not shown that he made any memorandum of the amount paid to his son, Asa Squires. This omission, together with the fact that the release was still in the possession of the father at the time of his death, would go to negative the idea that he had intended the money paid to Asa to be treated simply as an advancement, as he evidently did in the case of his daughter, Mrs. Dunn. This witness also says that he heard D. S. Squires say in March, 1901, "that he intended the land for the three boys." But if this was the father's intention there is no evidence that he ever made any effort by deed or will to execute it. That both father and son intended that the release should operate to bar the son from any right to participate as heir or distributee, in the distribution of the father's estate is too clearly expressed in the writing to admit of any doubt; and that the son regarded it as having this effect is clearly shown by a letter written by him to his brother Olen more than a month after his father's death. This letter reads

as follows: "Salt Lick Bridge, W. Va.     12/20/05.     Dear Bro. Oly I will try and write you a few lines hope this may find you all enjoying good health.  Well Oly we have not found any will, don't suppose pa made any.  He often talked of making one, but put it off too late.  Now it is left to be divided *amonth* the children equal except me.  I am cut out by a receipt I gave him in 1889.  That's when I went in the store, he gave me $1235 00/100 in all & wrote the Recpt for my full amt. from his estate, but as it is I am satisfied.  Now Oley the trouble is the amount of real estate he has been paying taxes on is 800 there is from 1000 ac to 1200 ac now if this land can't be divided up by the children & it has to go to law to be divided, you won't know when they will get done paying back tax.  I think you will see the point when you study it over.  I think it a good plan for you to write each of the heirs a letter & give them your views on the matter.  Ma will be the admrx for the personal property.  I will assist her.  Want to fix it up as soon after Jan. as we can & will send you a statement the appraisement bill.  Oly write to me at once & give us your views on the matter.  We are all well.  As ever, Asa."  This letter is conclusive to show that there was never any understanding, or agreement, between the father and son that this release should be cancelled, or that the money paid by the father to the son at the time the release was executed was to be treated simply as an advancement and the son restored to his rights as an heir. The release was found among the papers of D. S. Squires which came to the hands of his wife as administratrix.  That an heir, by the execution of such a writing, in consideration of money, or property, received by him from his father in his father's lifetime, does release all his rights as heir, or distributee, of the father's estate has been expressly decided by this Court in the case of *Roberts* v. *Coleman*, 37 W. Va. 143.  That decision was later approved in the case of *Coffman* v. *Coffman*, 41 W. Va. 8. We think those decisions settled the law in this State on the point, and determine the present case.  See also, *Brands* v. *De Witt,* 44 N. J. Eq. 545 (6 Amer. St. 909).

The supreme court of appeals of Virginia, however, has taken a different view of the law in the case of *Headrick* v. *McDowell,* 102 Va. 124, in which the point seems to have arisen for the first time in that court; and the reasons expressed in the opin-

ion of the court in that case, delivered by Keith, P., are certainly cogent in support of the other view. The decisions are not uniform on the subject, and there are other high authorities in support of the view that such a writing shall only be taken as evidence of an advancement, and does not estop the heir from afterwards claiming as such. But our Court, in the case of *Roberts* v. *Coleman, supra,* when the question first arose in this State, found plenty of authority of equal respectability for the opposite view, following the courts of Illinois and Massachusetts; and we regard the question as settled in this State, at least where there is more than one heir. But, suppose a case where there was but one heir, and he should execute such a release, and the ancestor should die intestate, seized and possessed of property, where would it go? Would not such a writing be as binding upon a sole heir as it would be upon one of many heirs? We do not now undertake to answer this question.

It is insisted that the fact that appellant, after executing the release, became a cripple for life by the loss of a leg, is a potent circumstance to show that the father did not intend to disinherit him. But we cannot see that this fact could have any weight in determining the effect to be given the writing. It was a voluntary act on the part of the son, and he has no right to complain of the apparent hardship. The execution of the writing had its possible advantages as well as disadvantages. If the father's estate had been worth much less than it really was, so that the money received by him would have amounted to more than the share of any one of the other children as heir, or distributee, he could not have been compelled by them to refund any portion of it. He assumed the risk of losing for the present use of the money.

We find no error in the decrees and affirm them.

*Affirmed.*