# CHARLESTON

PRITCHARD *et al.* v. PRITCHARD *et al.*

Submitted March 9, 1915.   Decided March 30, 1915.

1. DESCENT AND DISTRIBUTION—*Release by Heir—Effect.*

   A paper executed by a grandson at the request of his maternal grandfather, and while his mother and father are still living, and purporting to release as an heir all his claim on all estate owned by his parents, in consideration of a farm promised him by his grandfather at his death, will not be effective as release of his own or the right of his widow and heirs at his death to take by inheritance his share in the estate of his mother dying intestate, although a part or all of her estate came by devise from her father, the releasor's grandfather. (p. 92).

2. SAME—*Release by Heir—Validity and Effect.*

   A grandfather, while the grandchild's parent is still living, will not be permitted, by procuring such a release from his grandchild, to interrupt the law of descents and distributions, and to cut off his grandchild's right to take by inheritance his due proportion of his parent's estate. (p. 93).

   (LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Pocahontas County.

Suit by L. E. Pritchard and others against C. E. Pritchard and others. From a decree for plaintiffs, defendants appeal.

*Modified and Affirmed.*

*L. M. McClintic, F. R. Hill,* and *A. M. Pritchard,* for appellants.

*Price & McNeel,* for appellees.

MILLER, JUDGE:

Plaintiffs and defendants are the heirs and grantees of some of the heirs of the late Mary F. Pritchard, deceased, and S. C. Pritchard, her husband, seeking partition of a tract of 554 acres devised to said Mary F. Pritchard by her father, the late Archibald McCallister.

The question of importance presented for decision is whether on the face of the bill and exhibits the appellees, Norval Pritchard, Neal Pritchard, Walter Pritchard, Blanche Pritchard, Mary Pritchard and Elsie Pritchard, children and heirs, and Eudora Pritchard, widow of R. M. Pritchard. deceased, are entitled to the share in said land, which but for a certain paper executed by him at the request of his grandfather, Archibald McCallister, the said R. M. Pritchard would have inherited from his mother, the said Mary F. Pritchard.

Notwithstanding the said paper, pleaded as a release by the said R. M. Pritchard, binding his widow and heirs, of all right, interest and estate in said tract, the decree appealed from admitted said appellees, his heirs, to share in said partition, and to take per stirpes the share of their father in said tract, and denying to appellants the relief prayed against them based on said contract.

Said contract or release is as follows:

"KNOW ALL MEN BY THESE PRESENTS: That, I, R. M. Pritchard of Healing Springs, County of Bath, State of Virginia, son of S. C. and Mary F. Pritchard, of Dunmore, County of Pocahontas, State of West Virginia, as an heir do release all my claim on all estate owned by my parents, in consideration of a farm promised me by Archibald McAllister my grandfather of Indian Draft, County of Alleghany, State

of Virginia, at his death. This release is given as per request of above mentioned Archibald McAllister. I have hereunto set my hand and seal this the 16th day of February, 1889. (Signed) R. M. Pritchard, (SEAL.)''

It will be observed that this paper does not purport to be a release to any one, or in favor of any one. It is a paper executed by grandson to grandfather, at the request of the latter, and purports to ''release all my claim on all estate owned by my parents, in consideration of a farm promised me by Archibald McAllister my grandfather.'' It does not identify ''all estate owned by my parents'' as the land or estate to be or that was acquired by them by devise from Archibald McCallister, nor the ''farm promised me'' as the one devised to him by the will of his grandfather. It says ''all estate owned by my parents'', present tense.

But the bill alleges that at her death Mary F. Pritchard was seized and possessed of said 554 acres, more or less, willed to her by her father Archibald McCallister, January 21, 1889, and there is no allegation that she then or at any other time owned any other land. It is alleged that said R. M. Pritch-ard took possession of the farm mentioned in said paper and so devised to him at the death of his grandfather and lived upon and disposed of the same, and that the farm so devised to his mother should be partitioned among her other children, and that the claim of the widow and children of said R. M. Pritchard to an interest in said land constituted a cloud on the title of the other partitioners which should be removed.

It is well settled law that a release like the one involved here, when executed between parent and child, if fair and for a present advancement of money or land out of the parent's estate will operate as a release of all right of the child to share in the division and partition of the residue of the estate of the parent dying intestate. *Roberts v. Coleman,* 37 W. Va. 143; *Coffman v. Coffman,* 41 W. Va. 8, 23 S. E. 523; *Squires v. Squires,* 65 W. Va. 611, 64 S. E. 911; *Quarles v. Quarles,* 4 Mass. 680. And it is well settled also that the same rule applies as between grandparent and grandchild when the parent is dead at the time of the contract or release, and the grandchild is then a prospective heir of the grand-parent and would then be entitled to take by inheritance

immediately from the grandparent. Thornton on Gifts and Advancements, p. 540-541, sec. 551, and cases cited in note 1, p. 541. And these and other authorities support the proposition that such a contract between parent and child, when the child in consideration thereof is advanced and dies before his parent, will bind his heirs and bar them from participating as heirs in the estate of the grandparent. In such case it is said the effect of the release is the same as if the one advanced should die without children or heirs to take his share in his parent's estate.

The basic reason for upholding such contracts, gathered from these authorities and the statutes on the subject is, that the law favors equal distribution of a decedent's estate. Our statute on advancements, section 13, chapter 78, serial section 3913, Code 1913, which, like the statute of most of the other states, is based on the English statute of distribution, 22 and 23 Car. II, .chapter 10, supports this view. 4 Kent's Com. (4th ed.) 479, star page 418.

But we do not find that the law of advancements or of release between parent and child, has ever been carried to the extent of upholding such a contract of release between grandparent and grandchild during the life of the child's parent, so as to cut off the right of the child to inherit or participate in the distribution of his parent's estate. Such a contract as the one under consideration is in effect a release of one's prospective interest in his parent's estate to a third person, which the law does not sanction. 3 Washburn Real Prop., (6th ed.) section 1916; *Davis* v. *Hayden,* 9 Mass. 514; ·Thornton on Gifts and Advancements, section 551; 1 Story Eq. Jur., (13th ed.) section 339; *In re Thompson's Estate,* (S. D.) 27 Am. & Eng. Anno. Cases, 446, and note 451. In the second point of the syllabus in the case last cited, it was decided that the statute of South Dakota declaring that a mere expectancy of an heir apparent is not an interest, and that a mere possibility not coupled with an interest may not be transferred, was merely declaratory of the common law, "so that a release by an heir in the lifetime of the ancestor of his interest in the estate of the ancestor is inoperative." In the many cases cited in the note none are found applicable to the concrete case presented here, the release of a grandson

at the request of his grandfather of his right to inherit or take by inheritance an interest in his own parent's estate. Some of the cases involve transactions between grandparent and grandchild, but unless we have overlooked some case. none of them relate to transactions between persons so related during the life of the grandchild's parent.

It is assumed by appellants that the farm "promised me" referred to in the paper in question was the farm devised to R. M. Pritchard by the will of his grandfather, and that the "estate owned by my parents", referred to therein, was the farm devised to his mother Mary F. Pritchard. But there is nothing in the record except certain ex parte affidavits sought to be introduced here, and the fact that R. M. Pritchard and Mary F. Pritchard were each given farms by said will, showing or tending to show these facts. But assuming the fact to be as contended by appellants, the result would be the same. While the law does permit a prospective heir to release his interest in his parent's and in his grandfather's estate, if his parent be dead and he would inherit directly from the grandfather, the law will not permit a grandparent to control the law of descents and distributions of the parent's estate, even though a part or the whole of that estate may come by devise or inheritance from the grandfather.

The clerical errors in the decree complained of and the error therein omitting the name of John R. Hevener, grantee of W. J. Pritchard, from among those decreed the right to participate in the partition of said land, correctible by the record, may all be corrected when the case goes back to the circuit court for execution of said decree, and when so corrected the decree will in all other respects stand affirmed.

And the appellees substantially prevailing here will recover of appellants their costs incurred in this court.

*Modified and Affirmed.*