# CHARLESTON.

## ADAMS v. ADAMS *et al.*

Submitted April 9, 1918.   Decided April 16. 1918.

1. INFANTS—*Release of Inheritance—Disaffirmance.*
    A child who has signed a writing during his minority, releasing his right of inheritance in his father's estate in consideration of an advancement, cannot, after attaining his majority and waiting a number of years thereafter until his father's death, disavow his act and be let in to share the inheritance.   (p. 245).

2. DESCENT AND DISTRIBUTION—*Advancement—Change to Gift.*
    A parent who has made an advancement to one of his children and taken from him a writing evidencing the same cannot thereafter, by a mere oral declaration, convert it into an absolute gift. (p. 246).

Appeal from Circuit Court, Doddridge County.

Suit by William C. Adams against Curtis Adams and others.   Decree for defendants, and plaintiff appeals.

*Affirmed.*

*L. W. Chapman,* for appellant.

*J. Ramsey,* and *A. F. McCue,* for appellees.

WILLIAMS, JUDGE:

This appeal is taken by the plaintiff to a decree sustaining a demurrer to his bill and dismissing his suit, he having declined to amend.

The suit is brought by William C. Adams, one of the children of J. J. Adams, deceased, against his other children, his widow, C. C. Freeman his administrator and the Eureka Pipe Line Company, to have partition made of a tract of 154 acres of land of which J. J. Adams died seized, for the appointment of a receiver to take charge of and sell certain oil alleged to be in the hands of the Eureka Pipe Line Company belonging to decedent's estate, for the settlement of the administrator's accounts with said estate, and for the distribution of the proceeds to those entitled thereto.   Plaintiff admits in his bill that he signed a writing with his father on

the 18th of April, 1907, "releasing all his interest in the real and personal estate of the said J. J. Adams, now deceased, in consideration of two hundred seventy five dollars," but he avers he was then an infant and did not attain the age of twenty-one until the 25th day of January, 1908; and that he is, therefore, "not bound by said contract and hereby revokes the same." There is no denial that he received the stated consideration for the release of his interest or expectancy, but he avers that it was spent during infancy and, therefore, he is not liable to refund the same. He further avers that J. J. Adams died intestate on the 22nd of March, 1915.

Plaintiff's right to maintain this suit depends upon the effect of his release of his expectancy, as prospective heir to the estate of his father, in consideration of a present advancement. That such a contract is valid and binding and estops a child from thereafter claiming any interest in his father's estate is settled by prior decisions of this court. *Roberts* v. *Coleman*, 37 W. Va. 143; *Coffman* v. *Coffman*, 41 W. Va. 8; *Squires* v. *Squires*, 65 W. Va. 611; and *Pritchard* v. *Pritchard*, 76 W. Va. 91, 85 S. E. 29.

But, it is insisted, this case is distinguishable from those cited, on the ground that this plaintiff was an infant and not capable of making a binding contract, and, therefore, he could repudiate it. Although this is true, generally speaking, he must, nevertheless, disavow his contract within a reasonable time. What is a reasonable time depends on the facts and circumstances of each particular case. *Hobbs* v. *Hinton Foundry Co.*, 74 W. Va. 443. He cannot wait an indefinite time, until the rights of others will be injuriously affected by his disavowal and then exercise his option to their detriment, but he must act with reasonable promptness.

Plaintiff's father did not die until more than seven years had passed after plaintiff had attained his majority. He should have repudiated his contract within his father's lifetime and thereby have afforded him an opportunity to make such distribution of his property, by will or otherwise, among his children as he might think was just and proper. To allow plaintiff to rescind his contract at this late day and be let

in to share the inheritance with the other children, after enjoying for more than seven years an advancement which he regarded as a fair consideration for his right of inheritance in his father's estate would be inequitable, unfair and unjust to his brothers and sisters. In view of the circumstances, his long continued silence, after attaining his majority, amounts to a ratification of his contract.

But it is averred in his bill that plaintiff and his father made "an oral agreement in the presence of witnesses that the contract signed by your complainant on the 18th day of April, 1907, should be held for naught, and your complainant's share in the estate of J. J. Adams should be equal with the other heirs." It is insisted, in view of this averment, that the demurrer should have been overruled, that plaintiff was entitled to an opportunity to prove the averment, and, if true, that it shows a valid rescission of the contract by agreement. The demurrer admits the truth of the averment, but it was a mere oral agreement made without any consideration, whereas the original contract was in writing, signed by plaintiff and was supported by a valuable consideration. It was a contract which the father had made with plaintiff, one of his children, for the benefit of his other children, and could not be rescinded by mere oral declaration without any consideration to support it any more than payment of a valid debt could be thus forgiven. The original agreement created contractual rights which could not be thus lightly discharged. The advancement to plaintiff, being clearly established as such by the writing which he admits he signed, his father could not thereafter, by mere oral declaration, change its character and convert it into an absolute gift. That was the only purpose of the alleged oral declaration. 2 Min. Inst. 445, cited authoritatively in the opinion in *Roberts* v. *Coleman, supra,* at page 154. The demurrer to the bill was properly sustained, and the decree is affirmed.

*Affirmed.*