# CHARLESTON.

. FLOYD JACKSON v. RALPH C. JACKSON *et al.*

Submitted April 22, 1919.   Decided April 29, 1919.

1. WILLS—*Impeachment—Pleading Interest of . Party to Suit—Demurrer.*

   Lack of interest on the part of the plaintiff in a suit to impeach a will, in the question of its validity, apparent on the face of the bill, occasioned by omission to allege such interest or an affirmative disclosure of lack thereof, constitutes good ground of demurrer.   (p. 103).

2. SAME—*Pleading Interest of Party Assailing Instrument.*

   Though the issue as to the existence of such interest as is contemplated by sec. 32 of ch. 77 of the Code, is preliminary, subsidiary, collateral and incidental in character and is not finally and conclusively determinable in such suit, it must be alleged with the degree of certainty and legal sufficiency required by the rules of pleading, and so far proved as to establish it *prima facie,* if proof thereof is required.   (p. 103).

3. SAME—*Validity—Interest of Party.*

   A bill alleging the plaintiff to be an heir of the testator and to have been denied a provision for him in the will, equal to his expectant interest in the estate of the decedent, discloses a sufficient interest in him to enable him to prosecute a suit to impeach the will; but, if it sets up a valid and binding release of his interest in the estate, the bill is insufficient.   (p. 103).

4. EVIDENCE—*Parol Evidence—Release.*

   An oral promise or agreement on the part of a testator to ignore or disregard such a release, in the distribution of his estate and provide for the releasor therein, made on or before the date of the execution of the release, cannot be successfully set up against it by way of contradiction of its terms or avoidance of its legal effect.   (p. 109).

5. DESCENT AND DISTRIBUTION—*Release of Expectant Interest—Promise to Disregard Release—Validity.*

   Such a promise or agreement made, without consideration, after the execution of the release, is void and unenforcible.   (p. 109).

6. SAME—*Release of Interest in Estate—Avoidance—Grounds.*

   Palpable and flagrant injustice of a father to his children by a first wife and rank discrimination against them and in favor of his children by a second wife, superinduced by the influence of

the second wife and the second set of children, constitute no ground for avoidance or abrogation of solemn releases by such first set of children, of their respective interests in their father's estate, founded upon substantially valuable considerations.  (p. 110).

7.  SAME—*Release of Distributive Interest—Promise to Disregard Release—Laches.*

If such a promise were sufficient to invalidate or abrogate such release, the time intervening between the date of the making thereof and the death of the decedent could not be counted upon an inquiry as to laches, since performance might consistently have been deferred until the latter date.  (p. 110).

8.  WILLS—*Validity—Limitations.*

Institution of a suit to impeach a will within five years from the date of the probate thereof is a sufficient compliance with the requirement of sec. 32 of ch. 77 of the Code, respecting the time of institution thereof, even though a necessary party has been omitted; and an amended bill making the omitted person a party may be prosecuted.  (p. 110).

Bill by Floyd Jackson against Ralph C. Jackson and others.  Demurrer to bill overruled, and question certified.

*Reversed, demurrer sustained.*

*W. S. Clark, R. S. Blair,* and *S. A. Powell,* for plaintiff.
*Adams & Cooper,* for defendants.

POFFENBARGER, JUDGE:

The questions disposed of by the adverse ruling of the trial court upon a demurrer to a bill assailing the validity of a paper writing probated as and for the last will and testament of Ulysses Jackson and praying an issue *devisavit vel non* and impeachment of the same, and certified here for review, are whether the plaintiff is a "person interested," within the meaning of sec. 32 of ch. 77 of the Code, and whether lack of interest in the plaintiff apparent on the face of such a bill is a ground of demurrer.

A demurrer interposed to the original bill having the same object and also seeking cancellation of certain deeds executed by the testator in his life time, assigning three specific grounds: (1), lack of a necessary party; (2), lack of interest; and, (3), multifariousness, was sustained, and, upon

leave granted, the bill was amended so far as to bring in the omitted party, one of the heirs of the testator, and to eliminate the prayer for cancellation of the deeds. The demurrer to the amended and supplemental bill likewise assigned three specific grounds of demurrer: (1), that it shows on its face that the plaintiff is not a person interested within the meaning of the statute; (2), that the plaintiff's right to attack a release or relinquishment of his interest in his father's estate, disclosed by the bill, if any he ever had, is now barred by laches; and, (3), that the suit for impeachment of the will was not instituted within the time limited by the statute. The court below overruled the demurrer and has certified to this court the question of the sufficiency of the bill.

The will in question was executed August 20, 1912, and admitted to probate, September 18, 1912. The testator left surviving him two sets of descendants, some by his first wife and others by his second wife. The plaintiff is one of the former class. He and his brother, M. B. Jackson, and three children of his deceased sister stand in the same situation and bear the same relation to the estate. Ralph C., Morello, Cecil C. and Fremont Jackson and Lillie Pribble constitute the other class. The first wife died in 1876 and the plaintiff was then only about seven years old. About two years after her death, his father again married, and the bill alleges the introduction of the second wife into the family soon brought about a radical change in the attitude of his father toward himself, his brother and his sister. It charges "That they were required to work and labor beyond their strength and suffered other physical abuse at the hands of their, said father, due wholly or in part to the influence of his second wife exercised by her over him as aforesaid." The bill further charges that, through the influence of the stepmother, the father transferred practically all of his affection from the older children to the younger set, discriminated against the plaintiff, his brother and sister, reduced them to a position of inferiority, denied them opportunities for education imposed labor upon them beyond their strength and mistreated them generally. Having arrived at the age of twenty-

one years, the plaintiff, in 1891, left his father's home and took up his residence in the west. At a date not disclosed by the bill, the sister married and became the mother of three children. Prior to the year 1898, the brother also took up his residence in the west.

In that year, the plaintiff returned to his father's home in distress. He was needy, despondent and afflicted. The bill alleges that his brother was then in a hospital in the west and his sister needy and afflicted with an incurable disease from which she died about a year later. These circumstances induced him to apply to his father for financial assistance for himself, his brother and his sister. About a month or six weeks after this application had been made, his father informed him that he had concluded to give to each of the older children $2,000.00 for which they would be required to execute receipts. Sometime later, he tendered the plaintiff said sum of $2,000.00 and a receipt and agreement by which he was required to relinquish all of his interest in his father's estate, in consideration of that sum of money. At first, he declined to take the money and sign the agreement, but later he did accept and sign. The bill alleges, however, that he did so upon an understanding and agreement with his father, that the latter would thereafter sign a paper which the plaintiff had presented to him, to the effect that, notwithstanding the receipt, he and his brother and sister would be provided for in the distribution of the estate. The three separate receipts signed by the plaintiff, his brother and sister were acknowledged and admitted to record in the clerk's office of the county court of Ritchie County. The one executed by the plaintiff reads as follows: ''November Second, 1898, I have this day received of my father, Ulysses S. Jackson of Cisko, West Virginia, the sum of Two Thousand ($2000.00) Dollars, which sum has been advanced to me by my said father in full of all interest that I may have, or may hereafter have, in his estate, and I hereby accept said sum of Two Thousand Dollars as my full share of his estate, and relinquish all interest or claim present, or in the future, against said estate.''

It is alleged that the promise to disregard the receipt, in

the final disposition of the testator's estate, was frequently repeated with solemn assurance, after the signing of the receipt. Within a short time after the execution of that paper, the plaintiff again departed for the west and did not return until April 1907. On this occasion, his father again declined to sign the paper he had prepared for contradiction or avoidance of the receipt and release, but he repeated his assurance of intention and purpose to disregard them. He accompanied the plaintiff on his return, as far as Parkersburg, and, at that place and upon the journey, repeated this assurance. Further allegations respecting this transaction are that the step-mother's influence prevented the testator from signing the instrument of avoidance, at the time of the execution of the receipt, postponed it from time to time and finally defeated it altogether. She died in 1909, and after her death the testator entered upon and pursued a course of debauchery and licentiousness which brought about trouble constituting partial inducement for conveyances of substantially all of his land to his children by the second wife, and affliction which occasioned his death.

At the date of the plaintiff's departure from the ancestral home, as well as the date of his father's death, the estate, including that conveyed to the children by the second wife was worth, the bill alleges, $50,000.00 or $60,000.00, and consisted largely of real estate which the father had inherited, in an unimproved condition; and the first wife and her children contributed very largely, by their labor, to its enhancement in value by improvement. At a time and in a manner not disclosed by the bill, the testator gave his son Fremont Jackson property equivalent to his full share in the estate, and he was not made a party to the original bill, because the plaintiff did not desire to contest the provision made for him. Deeming him to have been adequately provided for, the testator gave him nothing by the will. By a deed dated, May 10, 1910, the testator conveyed to Cecil C. Jackson, a tract of land, containing 364 acres, and, by three separate deeds dated, August 16, 1910, he conveyed to Morello Jackson 290 acres, to Ralph C. Jackson 321 acres and to Lillie Pribble 210 acres. In each of the last three deeds, there was a provision

that the grantee should take the property conveyed to him in full settlement and satisfaction of his interest in the grantor's estate. The will gave to Morello Jackson the testator's home farm consisting of 75 acres of land, more or less, subject to a charge for the testator's funeral expenses and the liabilities consequent upon his last sickness. It gave to Ralph C. and Cecil C. Jackson and Lillie B. Pribble a tract of land containing about fifty acres, and all of the testator's personal estate, except a team of horses and a portion of the farming implements, which were given to Morello Jackson, and the piano which was given to Mrs. Pribble. Cecil C. Jackson was named as executor of the will and authorized to administer the estate without execution of a bond or any appraisement of the estate.

The ground of attack upon the validity of the will is alleged mental incapacity or mental weakness superinduced by excessive indulgence in licentiousness, and undue influence exercised by the second wife and the second set of children.

Recognizing the potency of the release as a barrier to the relief sought and the weakness of the ground of attack thereon, as set forth in the amended bill, the plaintiff insists that, since his cause of action against the release is only collaterally or incidentally involved, the scope of the bill being narrow and pertaining only to the validity of the will, not its construction nor its legal effect, he is not bound to do more, by way of disclosure of interest in the estate, than to show that he has a *bona fide* claim of an interest therein. He seems also to deny the right of the defendant to make lack of disclosure of sufficient interest on the face of the bill a ground of demurrer, because the statute does not seem to contemplate inclusion of the question of interest in the issue ultimately to be tried. The statute, sec. 32, of ch. 77 of the Code, has been construed as narrowing the issue to this: "whether any, and if any, how much of, what was so offered for probate, be the will of the decedent."

In *Dower* v. *Church*, 21 W. Va. 23, 48, the question of interest on the part of the plaintiff was treated as a preliminary one, to be disposed of upon a rule to show cause why the suit should not be dismissed. Adhering to this view of the nature

of the issue, the court held as follows in *Childers* v. *Milam*, 68 W. Va. 503: "The absolute validity of the rights of plaintiff is not a question in such suit. In this particular it is sufficient for plaintiff to show a *bona fide* interest in impeaching the will." In *Ward* v. *Brown*, 53 W. Va. 227, it was held not to be error to direct an issue *devisavit vel non*, without proof of the interest of the plaintiff. This holding carries the necessary implication that the issue is preliminary and subsidiary in character, for it means that the complaining party had waived the objection of lack of interest by submission to trial without having interposed it. He endeavored to avail himself of it for the first time in the appellate court.

Nevertheless, it is substantially jurisdictional. The statute accords the right of impeachment to a person interested and to no one else. *Dower* v. *Church*, cited, specifically holds that a person having no interest in the question of the validity of a will cannot contest it, and *Ward* v. *Brown* dispenses with the necessity of proof of interest, only in those instances in which lack of interest is not made a ground of objection. In *McMechen* v. *McMechen*, 17 W. Va. 683, it was expressly held that a person not bound by a will had no right to contest it. This is the uniform holding of the courts in other jurisdictions. *Pattee* v. *Stetson*, 170 Mass. 93; *Jackson* v. *Tozer*, 154 Pa. St. 223; *Meyer* v. *Henderson*, 88 Md. 585; *Sackman* v. *Campbell*, 10 Wash. 533; *Solari* v. *Barras*, 45 La. Ann. 1128; Page on Wills, sec. 325.

Being a matter of fact and jurisdictional in character, since the right of the plaintiff to prosecute the suit depends upon it, the plaintiff's interest ought to be set forth in the bill, wherefore omission of an allegation thereof, or an affirmative disclosure of lack of interest in the allegations of the bill, constitutes good ground of demurrer. A demurrer is analogous to a motion to dismiss, and, generally, may be used to perform the office of such motion. *Deitz* v. *Providence Washington Insurance Co.*, 31 W. Va.851. A demurrer to a bill is regarded as a plea to the jurisdiction. *Pryor* v. *Adams*, 1 Call. 382. *Ward* v. *Brown*, cited, impliedly holds that it would be erroneous to direct an issue *devisavit vel non*, if

lack of interst in the plaintiff appeared on the face of the record. It would be difficult to find a more conspicuous place for it in a record, than the face of the bill. Under the decision in *Dower* v. *Church*, cited a motion to dismiss for lack of interest in the plaintiff would be proper. On it, a rule would issue to show cause against the motion, even though the interest were sufficiently alleged. The motion would put the plaintiff to proof of the allegation. It would be idle to resort to such procedure, when lack of interest is disclosed by the bill, the very foundation of the suit.

The cases above cited from other jurisdictions disclose that it is generally held, out side of this state and Virginia, that the plaintiff's interest is a part of the principal or main issue raised in a proceeding of this kind, and is therein litigated and finally determined. Under that rule, of course, the allegations of the bill as to the interest of the plaintiff would have to measure up to the rule of sufficiency characterizing pleadings in general. Although, in this state, the interest of the plaintiff is not finally or conclusively determined on a bill filed for impeachment of a will, it must be so stated in the bill as to make out at least a *prima facie* case, or to show *prima facie* right in him to maintain the suit. What has been said in *Dower* v. *Church* and *Childers* v. *Milam*, respecting the nature of the interest and the extent to which it must be shown, applies to the proof rather than the pleading, and means that the proof need not go beyond *prima facie* establishment of the right or interest of the plaintiff. In the former case, it was held that an affidavit to the facts, stated by the widow in her answer, would have been sufficient proof of her interest in the question in controversy. That means only that the plaintiff is not required to prove his claim or interest to the same extent as if it were in issue for final and conclusive determination. The question of interest in that case depended upon the existence of a will other than the one made the subject of the bill for impeachment, and the good faith of a claim of the existence of the other will seems to have been conceded. The observations made by the court were intended for refutation of the contention that such other will must be fully established in order

to show the required interest on the part of the claimant.
The existence of a claim susceptible of *prima facie* establish-
ment was neither denied by the pleadings, nor set up by way
of objection to the prosecution of the suit. Hence, the court
seems to have treated it as waived. In *Childers* v. *Milam*,
the plaintiffs had purchased the right of one of the heirs of
the decedent. This relation of theirs to the estate was fully
set up by the bill and made out a clear *prima facie* case of
interest, which was not denied. The contention rejected by
the court, in the language relied upon in the brief for the
plaintiff, was that the plaintiffs must prove mental capacity
on the part of the grantor to execute the deed under which
they claimed. As there is a legal presumption in favor of
the mental capacity of a grantor, *Bade* v. *Feay*, 63 W. Va.
166; *Teter* v. *Teter*, 59 W. Va. 449, it was not incumbent
upon the plaintiffs either to allege or to prove contracting or
disposing capacity on the part of their grantor, in order to
make out a *prima facie* case. Hence, neither of these deci-
sions is inconsistent with the view that the plaintiff in such
case must allege facts sufficient to establish his interest and
prove them, *prima facie*, if required to do so. The terms
"*bona fide* claim" are not defined in either of the two cases
from which they are quoted. To make them mean less than
the requirement of allegation of a *prima facie* case of interest
and proof thereof, if required, would enable a person to do
what it is said, in *Dower* v. *Church*, he cannot do, namely,
contest a will upon a merely pretended and wholly unfounded
claim. In *Ward* v. *Brown*, the parties whose interests were
questioned were beneficiaries of the will, and, of course, had
a *prima facie* interest in the subject matter thereof. They
were not persons to whom the statute under consideration
was applicable, for they claimed under the will and not
against it. They were in court to sustain the will, not to im-
peach it; wherefore the question disposed of in that case was
entirely different from the one presented here. Construing
the statute in *Schultz* v. *Schultz*, 10 Gratt. 358. Judge Lee
said: "The words of the act are, that 'any person interested'
may appear and contest the validity of a will that has been
admitted to probate, by a bill in chancery; and a bill filed

for such a purpose should show how the complainant has an interest in the subject entitling him to call the validity of the will in question.''

The conclusion just stated disposes of all of the argument found in the brief filed for the plaintiff, respecting the nature and extent of the interest he is required to disclose and the manner of its disclosure. As to the rigidity with which such releases as the one exhibited with the bill have been upheld and enforced by the decisions of this court and the sufficiency of the matters relied upon for impeachment or avoidance thereof, that brief is silent. In so far as the alleged oral agreement to ignore the release, made at the date of the execution thereof, may be deemed to be relied upon as a contradiction of its terms or its legal effect, the plaintiff cannot, under the rules of law, either plead or prove it successfully. To permit him to do so would contravene a general and fundamental rule of evidence constituting a part of the law of contracts. *Duty* v. *Sprinkle,* 64 W. Va. 39; *Shields* v. *Simonton,* 65 W. Va. 179; *Chicago Art Co.* v. *Thacker,* 65 W. Va. 143; *McCoy* v. *Ash,* 64 W. Va. 655; *Mineral Ridge Manufacturing Co.* v. *Smith,* 79 W. Va. 736; *Clarksburg &c. Co.* v. *Davis,* 77 W. Va. 70. The alleged oral promise to sign an avoidance of the release and to provide for the plaintiff and his brother and sister in the distribution of the testator's estate, made after the execution thereof, was not efficacious nor binding, because it rested upon no consideration. *Adams* v. *Adams,* 95 S. E. 859. The release was a contract founded upon a valuable consideration, and binding upon the releasor. *Roberts* v. *Coleman,* 37 W. Va. 143, 155. It was carefully and skillfully prepared for the purpose of absolving the testator's estate from further liability to the plaintiff, after mature deliberation, and then, for better preservation and as a precaution against loss or destruction thereof, recorded in the clerk's office of the county court of the county in which the testator resided. Of course, the mere oral promise, without consideration, to rescind or ignore an agreement or contract of such dignity and solemnity, is plainly not enforceable, because it has no legal force or effect. *Thomas* v. *Mott,* 74 W. Va. 493.

The transaction between the testator and his children by his first wife may have been palpably and flagrantly unjust, under all the circumstances, but it is impossible to say the execution of the release was coerced in the legal sense of the term, or fraudulently obtained.   Notwithstanding the contributions in the form of labor, to the value of the estate, by the first wife and her children, it legally belonged to the testator.   He had sole and complete dominion over it and could do what he pleased with it.   He was legally entitled to the services of his children and bound to support them, until they became of age.   Their services rendered, while under age, therefore, constituted no consideration binding their father to provide for them in his will or otherwise, and they rendered none after they attained their majorities.   His obligation to them in that respect was merely moral, but it together with the payment of money, was sufficient to constitute consideration for the releases executed by his children.   However harsh his conduct and treatment may have been, he obtained nothing from them, by such conduct, that legally belonged to them.   In the procurement of the release, none of the usual elements of duress can be found, such as restraint of the person, personal injury, imprisonment, seizure or detention of goods or injury or destruction of property, or any threat to do any of the children injury or wrong, respecting their persons or any property they owned.   The fact that he made conveyances to three of the younger children, as and for their full shares of his estate, and afterward made further provision for them by will, as it is alleged he promised to do for the older set of children proves nothing as to his intent respecting the latter, or purpose respecting the releases he had taken from them.   At any rate, it is not sufficient to avoid the releases.   *Squires* v. *Squires*, 65 W. Va. 611.   He may have intended at that time to give the residue of his estate to Cecil and Fremont.

The suit was instituted against all of the heirs except Fremont Jackson, within five years from the date of the probate of the will but the amended and supplemental bill, making Fremont a party, was filed after the expiration of that period. Under principles enunciated in *Augir* v. *Warder,* 74 W. Va.

103 and *Huntington Plumbing & Supply Co.* v. *McGuffin,* 75 W. Va. 78, the omission of a necessary party to the original suit does not deprive the plaintiff of the right to prosecute the suit after an amendment bringing in the omitted party. The defective institution of the original suit stopped the running of the statute, or amounted to an attack upon the will within the time limited.

If the agreement relied upon were sufficient to avoid the release, the defense of laches would not appear on the face of the bill, for it was so general in its terms that it might have been performed in the execution of the will. This view eliminates all time down to September 18, 1912, and nothing in the conduct of the plaintiff after that date indicates purpose to abandon his claim, nor any prejudice to the defendants, resulting from delay.

Upon the principles and conclusions here stated, the decree complained of will be reversed, the demurrer to the amended and supplemental bill sustained and the decision herein certified to the Circuit Court of Ritchie County.

*Reversed and demurrer dismissed.*