## CHARLESTON.

SHERLEY MUNCEY, ROBERT LEE THOMPSON and MARY TRAMEL
*v.* NORFOLK & WESTERN RAILWAY CO.

(Nos. 6031, 6032, 6033)

Submitted March 6, 1928. Decided November 13, 1928.

*Goodykoontz & Slaven* and *Holt, Duncan & Holt,* for appellant.

*James Damron,* for appellees.

LITZ, JUDGE:

Each of these three causes was instituted October 30, 1926, to cancel a deed executed by the several plaintiffs and others to the Kermit-Warfield Bridge Company, a corporation, February 3, 1919, conveying a strip of land in Mingo county eighty feet in width and containing 3.2 acres, more or less, insofar as the deed grants the respective interests of plaintiffs therein, because of their infancy at the time of executing the conveyance.

The land in question constitutes a part of the right of way occupied by a short line of railroad extending from the main line of the Norfolk & Western Railway Company in Mingo county, West Virginia, across Tug River to a coal operation owned and operated by the Himler Coal Company in Martin county, Kentucky, constructed by the Kermit-Warfield Bridge Company and the Buck Creek Railroad Company, soon after the execution of said deed. This line of railroad has been maintained and used continuously since its construction, in connection with the main line of the Norfolk & Western Railway, to transport coal from said mine to market. All of which has been to the knowledge of the plaintiffs who have continuously resided within the immediate vicinity. On May 2, 1925, the portion thereof in West Virginia, owned by the Kermit-Warfield Bridge Company was conveyed by it to the Norfolk & Western Railway Com-

pany, and the portion thereof in Kentucky, owned by the Buck Creek Railroad Company was leased by it to the Norfolk & Western Railway Company, for a period of fifty years. Since that time it has constituted a part of the system of the Norfolk & Western Railway Company.

The defense is made that the suits were not instituted within a reasonable time after the plaintiffs attained their majority. The plaintiffs insisting that they are not barred by delay in disaffirming the deed, rely upon *Gillespie* v. *Bailey,* 12 W. Va. 70; *Blake* v. *Hollandsworth,* 71 W. Va. 387; *Hobbs* v. *Hinton Foundry, Machine & Plumbing Company,* 74 W. Va. 443, and *Adams* v. *Adams,* 82 W. Va. 244, as prescribing the time within which an infant may disaffirm his deed after coming of age. The first of these cases holds: "Where the purchaser of lands of an infant has not put valuable improvements upon the land, and has not been in actual possession of the land, after the infant has attained his majority for a period sufficiently long to bar a recovery of lands by reason of the statute of limitations, mere lapse of time will not amount to an affirmance of the sale by the infant, or bar him of his right to avoid it."

The ruling in *Blake* v. *Hollandsworth,* is as follows: "Ordinarily a conveyance of land by an infant may be disaffirmed at any time that action for the land is not barred by the statute of limitations."

In *Hobbs* v. *Hinton Foundry, Machine & Plumbing Company,* involving the ratification by an infant after attaining majority of the contract for the purchase of personal property, it was held, that the retention by the purchaser for three months after full age, of possession of property purchased by him while an infant, his enjoyment of the beneficial use thereof, payment of part of the consideration therefor, and his offer for sale of part thereof, do not preclude his right to disaffirm, or authorize the inference of an intention to ratify.

*Adams* v. *Adams, supra,* states that an infant must disavow his contract within a reasonable time after reaching majority, and that what is a reasonable time depends on the facts and circumstances in each particular case. "The most reasonable rule seems to be that the right of disaffirmance should be

exercised within a reasonable time after the infant attains his majority, or else his neglect to avail himself of this privilege should be deemed an acquiescence and affirmance on his part of his conveyance. The law considers his contract a voidable one on account of its tender solicitude for his rights, and its fear that he may be imposed upon in his bargains. But he is certainly afforded ample protection by allowing him a reasonable time after he reaches his majority to determine whether he will abide by his conveyance executed while he was a minor, or will disaffirm it. And it is no more than just and reasonable that if he silently acquiesces in his deed and makes no effort to express his dissatisfaction with his act, he should, after the lapse of a reasonable time, dependent upon circumstances, be considered as fully ratifying it. In other words, his case is one in which the maxim that 'silence implies consent,' may be applied with salutary effect. Then it is to be remarked that the grantee is entitled to some consideration. He should have a right to know whether the grantor intends to disaffirm his deed, and he should be justified in assuming that a neglect on the part of the grantor to express his dissent for a considerable length of time, is an affirmance as potent as any language could possibly be. The grantee should not be kept in suspense, and prevented from making valuable and permanent improvements, from the fear that at any time the grantor may disaffirm his deed, and render it a nullity. The grantor should not be allowed to take advantage of the increase in value of the land, that may be brought about by a number of causes which were unforeseen by both parties at the time the conveyance was executed, while he is under no corresponding obligation to rescind in case the land depreciates in value. Justice requires that he should arrive at a definite conclusion with a reasonable degree of celerity, or be held to have given his assent to the deed. While the opposite view is supported by eminent authority, yet the author is of opinion that, in reason, a long-continued silence on the part of the grantor, after the removal of the disability of infancy, should be regarded as an acquiescence on his act, and a ratification of his conveyance." I Devlin on Deeds, sec. 91 (3rd ed.).

The rule stated in *Adams* v. *Adams,* cited, is in accord with sound principles of equity and justice. ''It is frequently held the fact that he (the grantor) merely fails to repudiate the conveyance within a reasonable time after he comes of age does not of itself operate as an affirmance of a conveyance made during his minority; for that purpose, it being required that such quiescence continue for the period required for the running of the statute of limitations. But it seems more in accord with justice and wise policy to require the infant to repudiate the transaction within a reasonable time after reaching his majority. By such rule he receives adequate protection.'' Minor on Real Property, Vol. 2, (2nd ed.), page 1293.

''There are numerous cases holding that in the case of real estate mere lapse of time short of the Statute of Limitations will not cut off the right to avoid a conveyance made during infancy in the absence of circumstances sufficient to raise an equitable estoppel. But the contrary decisions (also relating to land), requiring the infant to disaffirm within a reasonable time after he becomes of age state a rule sounder in theory and better in practice.'' Williston on Contracts, Vol. 1, page 464.

''In what is apparently the more numerous line of cases, it is held that the right to avoid a deed during infancy, and recover the land, exists until it has been barred by the statute of limitations. But there are a considerable number of well-considered cases which hold that the election to avoid such a deed must be exercised within a reasonable time after the infant becomes *sui juris,* and that it is lost by failure to exercise it within such time.'' 14 R. C. L., page 252.

With the two well defined lines of decisions before us, we have decided to adhere to the rule stated in *Adams* v. *Adams,* cited, and shall proceed to apply this rule to the facts in the three several cases under consideration.

## SHERLEY MUNCEY CASE, NO. 6031

Sherley Muncey became of age January 27, 1926. The delay in the institution of her suit is certainly not unreasonable, especially in view of the fact that negotiations were

pending between her and the defendant for a deed of ratification from a time prior to her majority until, within a short while before the suit.

## ROBERT LEE THOMPSON CASE, NO. 6032

Robert Lee Thompson became of age February 8, 1922, four years, eight months and twenty-two days before instituting his suit. During which time the railroad constructed over the land in controversy was maintained and used continuously for the transportation of coal from the mine of the Himler Coal Company to market via main line Norfolk & Western Railway Company. All of which occurred to the constant knowledge of the plaintiff, Robert Lee Thompson, who resided within the immediate vicinity. With the view of discounting the effect of delay in the institution of his suit, the plaintiff, Robert Lee Thompson, testified as follows: "Q. I will ask you whether or not anyone for the Kermit-Warfield Bridge Company came to you after you arrived at the age of twenty-one and tried to get you to execute a deed of affirmance? A. Yes, sir. Q. Who was that? A. George Hale and Mr. Lang. Q. The Mr. Lang you refer to, do you know whether or not he held any position with the Kermit-Warfield Bridge Company? A. I have been told he was a secretary of the company—of the Himler Coal Company. Q. I hand you a certified copy of deed from the Kermit-Warfield Bridge Company to the Norfolk & Western Railway Company dated the 2nd day of May, 1925, attested by Eugene G. Lang, Secretary for the Kermit-Warfield Bridge Company, and will ask you whether or not that is the same Lang who tried to get you to sign this deed? A. Yes, sir, I suppose it was. Q. Did you sign it or refuse to sign it? A. Refused to sign it."

James Damron, of counsel for the plaintiffs, testified that he notified counsel for the defendant by letter dated August 15, 1925, of his employment by the plaintiffs, and demanded a reconveyance from the defendant to the several plaintiffs, of the respective portions of the land in controversy conveyed by them to the Kermit-Warfield Bridge Company by the deed of September 3, 1919.

The plaintiff, Robert Lee Thompson, does not say when it was that the deed of affirmance was presented to him for execution, nor that he ever gave notice of the disaffirmance except through his counsel, James Damron, on or about August 5, 1925. What acts on the part of an infant grantor of real estate after age are necessary to constitute his affirmance; and when may the right be exercised under the rule requiring avoidance within a reasonable time after majority? In *Irvine* v. *Irvine,* 9 Wall. 617, 627, it is stated: ''There is a well recognized distinction between the nature of those acts which are necessary to avoid an infant's deed, and the character of those that are sufficient to confirm it. * * * There is reason for this distinction between the effect of acts in avoidance and that of acts of confirmation. We have seen that an infant's deed is not void; it passes the title of the land to the grantee. Now, if the deed be avoided, the ownership of the land is re-transferred. The seisin is changed. There is fitness in a rule that title to land shall not pass by acts less solemn than a deed; that its ownership shall not be divested by anything inferior to that which conferred it. On the other hand, a confirmation passes no title; it effects no change of property; it disturbs no seisin. It is therefore itself an act of a character less solemn than is the act of avoiding a deed, and it may well be effected in a less formal manner.''

It is generally held that the ratification of a deed of an infant after majority may be effected with less formality than its avoidance, which requires some act unequivocally manifesting an intention to disaffirm the conveyance, as for example, a formal re-entry by the grantor after becoming of age, a conveyance of, or suit to recover, the property, or a definite notice of disaffirmance to the grantee or successor in title.

As to what is a reasonable time within which the right of disaffirmance may be exercised, depends upon the facts and circumstances of the particular case. ''The mere failure (of the grantor) to disaffirm the transaction within a reasonable time after his majority may operate as a ratification thereof, especially when other iniquities exist, or the rights of third

persons have intervened; and in some jurisdictions, by force of statute, the transaction is binding unless disaffirmed within a reasonable time. What is a reasonable time is determined by the circumstances of the particular case." 31 C. J., page 1015.

An examination of the adjudicated cases discloses that periods of time ranging from a few months to several years have been considered as constituting unreasonable delay in exercising the right of disaffirmance. In view of the peculiar use of the land in controversy requiring constant maintenance of the improvements thereon by the defendant and its predecessor in title to the knowledge of the plaintiff, Robert Lee Thompson, and the intervening rights of the defendant, we are of opinion that he has not exercised his right of disaffirmance within a reasonable time after attaining majority.

## MARY TRAMEL CASE, NO. 6033

Mary Tramel became of age March 29, 1921, five years, seven months and one day before the institution of these suits. The evidence with reference to disaffirmance on her part is similar to that in behalf of Robert Lee Thompson, except she states that she was requested to sign a deed of affirmance about a year after reaching her majority. Being of opinion also that she did not exercise her right of disaffirmance within a reasonable time after reaching majority, the decree in favor of the plaintiffs, Robert Lee Thompson and Mary Tramel, is reversed and their bills dismissed. The decree for the plaintiff, Sherley Muncey, is affirmed.

*Affirmed in the first case;*
*reversed in the second and third.*